# Staunton

RALPH TAYLOR AND MALCOLM TAYLOR v. KING COLE THEATRES, INCORPORATED, ET ALS.

September 6, 1944.

Record No. 2833:

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Coleman & Coleman* and *Bandy & Bandy*, for the appellants.

*George M. Warren* and *Hagan Bond*, for the appellees.

GREGORY, J., delivered the opinion of the court.

Ralph Taylor and Malcolm Taylor, the appellants here, filed their bill of complaint in the court below asking the court to direct who now has the power and authority to extend a certain lease for the ground floor of a building in which the complainants operated a moving picture theatre. King Cole Theatres, Inc., the assignee of the lease, was made a party defendant, and it is the only defendant in so far as this appeal is concerned. The court below was of opinion that no extension or renewal of .the lease could be made without the consent and approval of King Cole Theatres, Inc.

The facts are not in dispute. In the early part of 1938 the appellants were operating a small theatre in Gate City and, needing larger space, sought out B. K. Barker, Birdie K. Quillin, and Beverly Barker, the owners of a certain lot situate in the business section of Gate City, and requested that they erect a building on the lot, the downstairs of which would serve as a place to project moving pictures.

This was agreed to by the owners and the appellants. They entered into a written contract on March 21, 1938, wherein the owners agreed to erect a building on the said lot and lease the ground floor to the appellants, for which they, the appellants, were to pay the owners twenty-five per cent of the gross receipts of each performance. The owners agreed to install in the theatre the necessary seats and other equipment, and the appellants agreed to use this space for a moving picture theatre, and they also agreed to furnish the necessary moving picture machines and other like equipment. The lease was to continue over a period of five years from the time of the occupancy of the building, and there was provided in the lease a renewal agreement upon terms to be agreed upon for an additional five-year period.

The building was erected and the appellants began the operation of their theatre on July 15, 1938, and they continued their operation under the contract with the owners until April 20, 1939. On that date the owners assigned in writing to King Cole Theatres, Inc., all their right, title and

interest as landlords under the lease agreement of March 21, 1938, with the appellants. Thereafter, the appellants continued to operate the theatre, recognizing King Cole Theatres, Inc. as their landlord by making the payment of the said twenty-five per cent of the gross receipts to it for two years.

In April, 1941, the appellants desired to renew their lease for the ground floor for an additional five-year period under the renewal agreement contained in the first contract of March 21, 1938. Instead of obtaining this renewal from King Cole Theatres, Inc., they entered into another contract on April 19, 1941, with Birdie K. Quillin, B. K. Barker, and Beverly Barker, the original lessors, for an additional term of five years to commence on July 15, 1943, for a specified rental of $180 per month. This latter contract was entered into without the knowledge or consent of King Cole Theatres, Inc., the assignee. Thereupon, a controversy arose between King Cole Theatres, Inc., the appellants, and the original owners of the building, as to who had the right and authority to execute a renewal of the lease. As a result of this controversy, this suit was instituted and decided against the appellants.

As we have already indicated, there were three written contracts involved. First, a contract of lease of March 21, 1938, between the owners as lessors, and Ralph Taylor and Malcolm Taylor, the appellants, as lessees. Second, a contract of April 20, 1939, between the said owners as lessors, and King Cole Theatres, Inc., assigning unto the latter all of their right, title and interest in the lease contract, including the right of renewal. Third, a contract of lease of April 19, 1941, between the original lessors, and the appellants, granting an extension of the original lease for five years from July 15, 1943, at a rental of $180 per month.

There is no provision in the original lease contract prohibiting the lessors or the lessees from assigning their rights under the lease. In the absence of an express prohibition, all leases are assignable. *Wainwright* v. *Bankers' Loan, etc., Co.*, 112 Va. 630, 72 S. E. 129.

In the first lease contract, there appears this purported renewal clause: "It is mutually understood and agreed that this contract and indenture of lease be in force and effect for a period of five years from the date of beginning of the operation of said theatre by the parties of the second part, at the end of which five-year period the parties of the second part shall have the exclusive privilege of renewal of the same, *upon the terms to be agreed upon for the said five year period*". (Italics supplied.) The italicized portion is so indefinite that it likely would be unenforceable.

As we have seen, the second contract of April 20, 1939, passed all right, title and interest of the owners, the original lessors, to the King Cole Theatres, Inc. This contract was in legal effect an assignment of the entire interest of the owners in the lease. This language of the assignment is so plain, it is beyond dispute: "The said parties of the first part (the original lessors), in consideration of the covenants and agreements of the said party of the second part herein set forth, hereby covenant and agree to transfer, assign and relinquish to the said party of the second part (King Cole Theatres, Inc.) their entire right, title and interest as landlord under their lease agreement with the said Ralph Taylor and Malcolm Taylor, and do hereby declare it to be their express intention and purpose to confer upon the said party of the second part all of the rights accruing to the position of landlord under the said lease agreement, and for the term therein granted".

■ Under this last quoted clause of the assignment, the original lessors passed to the King Cole Theatres, Inc., all of their rights, including the right of renewal.

There is another important clause in the assignment which expressly denies the lessors the right to renew the lease and expressly confers that right upon the King Cole Theatres, Inc. The clause is as follows: "The parties of the first part further covenant and agree that they will not terminate the present lease agreement to the said Ralph Taylor and Malcolm Taylor, or execute any new lease to the said Ralph

Taylor and Malcolm Taylor, or any other party without the express consent of the party of the second part, nor interfere in any way with the collection of rents or other rights conferred upon the said party of the second part so long as this contract remains in full force and effect".

These contract provisions in the assignment clearly prohibited the original lessors from executing a renewal of the lease to the appellants without the consent of King Cole Theatres, Inc.

The fact is that the lessors, Birdie K. Quillin, B. K. Barker, and Beverly Barker, did execute a new lease to the appellants without the consent of King Cole Theatres, Inc., in clear violation of the quoted clause. In this third contract the original lessors covenanted with the appellants that they had good and lawful right, power and authority to execute the lease, when at that very time, they had no such power or authority, for they had previously assigned this identical power and authority, along with all of their other rights in the lease, to the King Cole Theatres, Inc.

However, for the purposes of a decision of this case, we are not concerned with the liability, if any, of the lessors, for they are not before the court. Our inquiry is limited to the single question, which is: Whether or not the lessors could enter into a new lease with the appellants without the consent and approval of King Cole Theatres, Inc. The court below, as we have indicated, resolved this question against the appellants, and we think the court was correct in so doing.

In addition to the fact that the original lessors had solemnly covenanted not to enter into a new lease with the appellants or others, the general law is that covenants to renew a lease are not personal, in the absence of an agreement making them so, but run with the land. The legal successors of the lessor and the lessee are entitled to the benefits and are burdened with the duties and obligations which such covenants confer and impose on the original parties. 35 C. J., Landlord and Tenant, sec. 133.

We emphasize the fact that for two years the appellants recognized the existence of the assignment of the lease, and also recognized King Cole Theatres, Inc. as their landlord, by paying the rent to it without objection during that time. Another significant fact is that the renewal provision in the original lease, as we have pointed out, is so indefinite and vague it likely could not be enforced. It provides for the renewal "upon the terms to be agreed upon for the said five-year period". However, we do not base our decision of the case upon these considerations. We prefer to decide the case upon the fact that King Cole Theatres, Inc. was the owner of the lessors' interest in the lease, including the right to renew the same, and it alone could execute or agree to a valid renewal.

Another point which compels affirmance of the decree is that the cause was heard upon bill and answer. Where this is done, the averments of the answer must be taken as true. When this rule is applied, and the averments in the answer filed in this case are taken as true, as they must be, a decree for the appellee is required.

Because the rental payments were twenty-five per cent of the gross receipts, and certain equipment was to be installed in the building by both parties, the appellants contend that a partnership was thereby created, and that a relation of personal trust existed. We cannot agree that such was the case. There are many instances where like compensation has been provided for in a lease, but in no case have we found that a partnership was thereby created. There was nothing personal in the provision for the payment of the rental. There was no restriction in the lease upon an assignment of the rental. The percentage of the gross receipts to be paid by the appellants to the landlord was clearly intended by the parties as rental for the use of the ground floor. There was no intention to create a partnership. There was no agreement to share in the profits or the losses. The percentage of gross receipts to pay the rental

was to be paid regardless of profits or losses. The relation of landlord and tenant was intended. See note in 131 A. L. R., p. 536.

The decree is affirmed.

*Affirmed.*