## Genevieve P. Davis

v.

## Cleve Marsh Hunt Club, also known as Cleve Marsh Associates, et al.

Record No. 901184

June 7, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ.,
and Poff, Senior Justice

*William G. Broaddus (Robert L. Hodges; Albert J. Lilly, Jr.; McGuire, Woods, Battle & Boothe*, on briefs), for appellant.

*William M. Sokol (Jennifer Lee Parrish; Roberts, Sokol, Ashby & Jones*, on brief), for appellees.

JUSTICE STEPHENSON delivered the opinion of the Court.

This appeal involves issues about (1) the existence of a right-of-way and (2) the enforceability of a purported renewal option in a lease.

Cleve Marsh Hunt Club, a partnership, and another (collectively, Hunt Club) brought a declaratory judgment proceeding against Genevieve P. Davis (Landowner) in which the Hunt Club sought to have the court establish (1) an easement across the Landowner's property, and (2) its right to exercise an option to renew a lease. Following an *ore tenus* hearing, the trial court entered an order establishing the easement and denying the existence of an enforceable option to renew. Each party challenges that portion of the trial court's judgment adverse to that party's contention.

I

In 1966, the Landowner and her husband, E. Conway Davis (the Davises), purchased Cleve Marsh, a tract of marshland, containing 360 acres, more or less, located on one shore of the Rappahannock River, in King George County. The Landowner's residence property is located on the other shore of the river, in Caroline County, directly across the river from Cleve Marsh. The 1966 deed to the Davises granted a right-of-way to the river across the property located in King George County (the King

George County right-of-way). Conway Davis, however, used his Caroline County property and its landing for access to the marsh.

In 1978, the Davises contracted to sell a 10/11ths undivided interest in Cleve Marsh to the Hunt Club for $250,000. Conway Davis retained a 1/11th undivided interest so that he could continue to use the marsh. The contract of sale contained the following provision:

> It is further agreed between the parties that the [Davises] hereby give the [Hunt Club] right of ways to existing landings from state highway through Davis Farm property in Caroline County of Conway Davis and Genevieve Davis and their heirs, or assigns who may later have an interest in this farm. . . . The [Hunt Club] shall have the right to maintain said right of way in good condition for the use of ingress and egress into aforesaid marshs [sic].

The contract of sale was contingent upon the parties entering into a lease of a house on the Caroline County property and of other marshlands.

On the same day the sales contract was executed, the parties also executed a lease covering the following properties:

> the Patterson Farm House, the surrounding yard and the adjacent buildings and the marshes on the Rappahannock River known as the upper, middle and lower marshes together with the right of way for egress and ingress from state highway to Patterson Farm House and from farm house to Cleve Marsh, upper marsh, middle marsh and lower marsh.

The lease provided for a term of 10 years, a stated rent, and an option to extend the lease for an additional five-year term, "at a mutually agreed rent." The lease was attached to and made a part of the sales contract "as if fully set forth [t]herein."

On May 30, 1978, the Davises executed a deed conveying the agreed interest in Cleve Marsh to the Hunt Club. The deed also granted the King George County right-of-way but made no mention of a right-of-way across the Davises' Caroline County property.

After the sale of Cleve Marsh, Conway Davis continued to hunt in the marsh with the Hunt Club's partners. The hunters always reached the marsh by using the right-of-way across the Land-

owner's Caroline County property to the landing thereon. After Conway Davis' death in 1983 and until 1988, the Hunt Club continued to gain access to the marsh only across the Landowner's Caroline County property.

In 1988, the Hunt Club attempted to exercise the renewal option in the lease. The Landowner refused to renew the lease and informed the Hunt Club members that they no longer could enter her Caroline County property for any purpose, including access to Cleve Marsh.[1] The present litigation ensued.

The trial court held that a permanent right-of-way across the Landowner's Caroline County property was created by an express grant in the contract of sale. The court concluded that, by employing the words, "hereby give," the Davises manifested a present intention to grant an easement.[2]

## II

The Landowner contends that the trial court erred in holding that the contract of sale contained an express grant of a permanent easement across her Caroline County property. In support of this contention, the Landowner first argues that, because the lease, which is a part of the sales contract, granted an easement to Cleve Marsh for a limited term, there is an inconsistency between the language in the contract and the language in the lease. Further, "[a]ny apparent inconsistency between a clause that is general and broadly inclusive, and a clause that is more specific in character should be resolved in favor of the latter." Thus, the Landowner concludes, "[t]he Contract does not show clearly the intent to grant a permanent easement," and the court's ruling "renders that portion of the Lease giving a right-of-way to Cleve Marsh of no effect." We do not agree.

---

[1] The record supports the Hunt Club's assertion that the King George County right-of-way was "neither passable, convenient, practical, suitable nor safe for use by anyone attempting to hunt from Cleve Marsh. The distance from the point where the King George access presumably intersects the Rappahannock River to the hunting area of Cleve Marsh is approximately 3 miles by water. At this point, there is a steep bank which makes it impossible to launch a boat." Indeed, the trial court found this right-of-way to be "useless for the [Hunt Club's] purposes."

[2] We have held that "'[n]either statutory nor common law requires a grantor to employ words of art so long as 'the intention to "grant" is so manifest on the face of the instrument that no other construction could be put upon it.'" *Corbett* v. *Ruben*, 223 Va. 468, 471, 290 S.E.2d 847, 849 (1982).

The first part of the contract provided for the sale of a 10/11ths undivided interest in Cleve Marsh at a price of $250,000 and for the manner in which the purchase price would be paid. The second part of the contract provided that the Davises "hereby give" to the Hunt Club a right-of-way across the "Davis Farm" for the "use of ingress and egress into *aforesaid* marsh[es]." (Emphasis added.) The lease, on the other hand, related to different lands, i.e., "the Patterson Farm House, the surrounding yard and the adjacent buildings and the marshes on the Rappahannock River known as the upper, middle and lower marshes." The lease further provided for a "right of way for egress and ingress from state highway to Patterson Farm House and *from farm house to Cleve Marsh*, upper marsh, middle marsh and lower marsh" (emphasis added) for the ten-year term of the lease.

We see no inconsistency between the language in the contract and that in the lease. The contract did not limit the existence of the right-of-way to the period of the Davises' ownership of the property but expressly extended it to the period of ownership by the Davises' "heirs, or assigns who may later have an interest in this farm." Thus, a permanent easement was created.

Moreover, the permanent easement was given as a means of ingress to and egress from the "aforesaid marsh[es]," and the only marsh previously mentioned in the contract was Cleve Marsh. Obviously, the lease provision granting an easement from the Patterson Farm House to Cleve Marsh simply afforded the Hunt Club direct access to Cleve Marsh from the farmhouse and was limited to the period of time that the Hunt Club would be occupying the farmhouse under the lease. Thus, we hold that the lease provision did not contradict, repeal, or replace the permanent easement granted in the contract.

Next, the Landowner asserts that no express grant of a permanent easement could result from the contract of sale because the contract was merged entirely in the lease and in the subsequent deed. It is true that "no rule of law is better settled than that where a deed has been executed and accepted as performance of an executory contract . . . [,] the rights of the parties rest thereafter solely on the deed." *Charles* v. *McClanahan*, 130 Va. 682, 685, 108 S.E. 858, 859 (1921). Further, the doctrine of merger applies to leases as well as to deeds. *Powell* v. *Orphanage*, 148 Va. 331, 347, 138 S.E. 637, 643 (1927). We must determine, therefore, whether the contract of sale was executory.

■ Unquestionably, with respect to the sale of Cleve Marsh, the contract was executory. The contract provided that the Davises "agree to sell" and the Hunt Club "agree[s] to pay." The language in the part of the contract pertaining to the right-of-way, however, is altogether different. In that part, the Davises "hereby give" the right-of-way. We agree with the conclusion reached by the trial court about the language of the contract respecting the right-of-way:

> There is nothing executory about this language. It is a present grant . . . . The language is plain and susceptible to no other reasonable interpretation. Such an interpretation is consistent with the other provisions of the contract.

Thus, we hold that the part of the contract that expressly granted a right-of-way was not executory but created a present right in land. Moreover, the contract of sale stands by itself and is in no way inconsistent with or merged in either the lease or the deed.[3]

## III

The Hunt Club has assigned cross-error to the trial court's holding that the Hunt Club did not have an enforceable option to renew the lease for an additional five-year term. The lease states that the Hunt Club would have the "option of One (1) additional Five (5) year term *at a mutually agreed rent*." (Emphasis added.) The court concluded that, because the renewal option did not provide for an agreed rental, it was too indefinite to be enforceable.

■ We have not decided the precise question previously. Among other jurisdictions, however, a split of authority exists. *See* Annotation, *Validity and Enforceability of Provision for Renewal of Lease at Rental to be Fixed by Subsequent Agreement of Parties*, 58 A.L.R.3d 500, 504 (1974 & Supp. 1990). We agree with the trial court, however, and hold that a lease renewal provision that does not set forth an agreed rental is invalid and unenforceable, absent a specified method or guideline for fixing rent.

Our holding is consistent with our rationale in *Boisseau* v. *Fuller*, 96 Va. 45, 30 S.E. 457 (1898). In *Boisseau*, we held that an agreement, signed by the parties, designating the property to

---

[3] Our holding that there is an express grant of an easement across the Landowner's Caroline County property makes it unnecessary for us to determine whether the trial court erred in finding an easement by estoppel and in admitting extrinsic evidence.

be leased, the rent to be paid, and the term of the lease, was merely an executory agreement for a lease. 96 Va. at 48, 30 S.E. at 458. This was so because the agreement also provided that the agreed provisions were "to be covered by a regular lease subject to the approval of all parties." *Id.*

Our holding also comports with what we said in dicta in *Taylor v. King Cole Theatres*, 183 Va. 117, 31 S.E.2d 260 (1944). In *Taylor*, the lease provided that, at the end of the lease term, the lessees "shall have the exclusive privilege of renewal of the same, *upon the terms to be agreed upon for the said five year period.*" 183 Va. at 121, 31 S.E.2d at 261 (italics in original). We stated that "[t]he italicized portion is so indefinite that it likely would be unenforceable." *Id.*

## IV

In sum, we hold that (1) the Davises expressly granted to the Hunt Club a permanent easement across their Caroline County property for access to Cleve Marsh, and (2) the purported option to extend the lease is unenforceable. Accordingly, we will affirm the trial court's judgment.

*Affirmed.*