## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Nuline Industries, Inc.

v.

Media General, Inc.

November 23, 1994

Case No. CL93-375

BY JUDGE WILLIAM H. LEDBETTER, JR.

This case is before the court on the defendant's demurrer to an amended motion for judgment filed by the plaintiff after a similar demurrer to its original motion for judgment was sustained.

The pertinent facts are not disputed. They are set out with considerable particularity in counsel's memoranda and detailed in the court's opinion letter of February 7, 1994. Nevertheless, it would be helpful to repeat here some of the material facts of the case.

Of course, since the case is before the court on demurrer, the facts are those alleged in the pleadings. The demurrer admits those factual allegations and all reasonable inferences that can be drawn from them. Virginia Code § 8.01-273; *West Alexandria Properties v. First Virginia Mortgage*, 221 Va. 134, 267 S.E.2d 149 (1980). Therefore, the facts recited herein are taken from the amended motion for judgment and attachments to it. The contract in controversy is attached to and made a part of the plaintiff's pleading.

In 1988, Media General sold the assets of its subsidiary, Onduline, Inc., to Building Materials Marketing, Inc., the predecessor to Nuline. Onduline manufactured roofing materials. The parties made an agreement whereby Building Materials Marketing, Inc. (now Nuline) would handle for Media General all warranty claims asserted by pre-1988 purchasers of Onduline

roofing products. The claims processing arrangement is covered in paragraph 17 of the parties' "asset sale and loan agreement."

Pursuant to paragraph 17 of the agreement, the claims processing fee to be paid by Media General to Nuline consists of two parts. First, Nuline is to be paid a "fixed fee" of $31,629.59 per month during the ten-year term of the agreement. Second, Media General is to pay Nuline a "variable fee." For the first five years (i.e., through 1992), the variable fee is $180,000.00 per annum, $15,000.00 per month, with the possibility that this fee could be reduced under certain circumstances. For the second five years (i.e., 1993 to 1997), the variable fee is "an amount to be mutually agreed upon in 1992."

During the first five years, Media General paid both fees to Nuline. Since 1992, Media General has paid the fixed fee but has not paid the variable fee because the parties have been unable to agree on the amount of the variable fee for the second five years.

Nuline's original motion for judgment sought a declaratory judgment that Media General is obligated under paragraph 17 of the agreement to pay a variable fee "in an amount based upon the volume of claims processed, which amount shall be not less than $307.69 per claim." In a separate count, Nuline asserted a contract claim and sought damages for Media General's breach of paragraph 17(b) of the agreement. In both counts, Nuline sought attorney's fees pursuant to paragraph 21(g) of the agreement.

The court sustained Media General's demurrer to both counts, holding that the provision for payment of a variable fee for claims processed during the second five years is too vague and indefinite to be enforceable. See opinion letter dated February 7, 1994, and order entered on February 22, 1994.

Consequently, Nuline filed an amended motion for judgment. Nuline's amended motion for judgment asserts essentially the same facts alleged in the original pleading but rephrases its claims for relief. In Count I of the amended motion for judgment, Nuline alleges a material breach of contract by reason of Media General's failure to pay the variable fee for claims processed during the second five years of the agreement. In Count II, Nuline asserts a claim in quantum meruit for claims processed since 1992.

Media General demurred to Count I of the amended motion for judgment, the contract claim, for the same reason it demurred to the original motion for judgment.

Nuline now asserts that its amended pleading properly seeks relief for Media General's breach of contract "based on a jury's determination of a reasonable variable fee" for the second five years. This can be done, Nuline argues, because the parties' agreement contains language from which the court can find a standard or guideline for determining a reasonable fee for processing the warranty claims during the period 1993 to 1997. That standard or guideline is volume. Therefore, Nuline says, paragraph 17(b) of the parties' agreement can be enforced consistent with the principles enunciated in *Allen v. Aetna Casualty and Surety Company*, 222 Va. 361, 281 S.E.2d 818 (1981).

The court addressed a similar contention in its opinion letter of February 7, 1994, and rejected it.

In *Allen*, the Supreme Court held that an agreement to make a settlement, without specifying more, constitutes only an agreement to negotiate at a later day and cannot be enforced.

In *Davis v. Cleve Marsh Farm Hunt Club*, 242 Va. 29, 34, 405 S.E.2d 839 (1991), the Supreme Court held that a "rent to be agreed upon" renewal clause in a lease is too indefinite to be enforceable. The Court held that "a lease renewal provision that does not set forth an agreed rental is invalid and unenforceable absent a specified method or guideline for fixing rent." Also see *Taylor v. King Cole Theatres*, 183 Va. 117, 31 S.E.2d 260 (1944).

This agreement contains no provision establishing a method or guideline for determining the amount of the variable fee to be paid during the second five years, much less a *"specified"* method or guideline for such purpose. Even if, as Nuline asserts, the agreement can be interpreted so that the volume of claims processed is a key factor, or the factor, used by the parties in setting the variable fee for the *first* five years, it does not follow that that constitutes a method or guideline for ascertaining the variable fee to be paid for claims processed during the *second* five years. If the parties intended to carry over their bargain, or the method by which they struck their bargain, regarding variable fees from the first five years to the second five years, they could easily have said so. If they intended to continue with the same amount of variable fee, or the same scheme for determining it, the "to be mutually agreed upon" clause makes no sense. Clearly, the parties intended to do, or at least to consider doing, something different. Under such circumstances, in Virginia a court cannot supply the terms of a fee "to be mutually agreed upon" by reference to the old terms and thereby fix the fee for the new term.

Nuline cites cases from other jurisdictions that hold, under circumstances somewhat different from these, that, for example, a price adjustment provision may be enforced using reasonableness as the measure for determining the price terms. Nuline also cites, by analogy, U.C.C. § 2-305(1) (Virginia Code § 8.2-305), which validates open price terms in contracts for the sale of goods if the parties intend to have a binding agreement.

As for the citations of appellate court cases from other jurisdictions, this court acknowledges that a split of authority exists regarding whether and under what circumstances a court will supply a missing price term in a contract rather than void the contract for indefiniteness. However, it is clear that Virginia adheres to the traditional view that contracts must be complete and reasonably certain and that courts will not fix material terms of a contract where the parties themselves fail to do so.

As for Nuline's analogy to the Uniform Commercial Code, it is likewise clear that Virginia has not applied the "open price term" rule of § 2-305, applicable to sales of goods, to other types of contracts. Unquestionably, the U.C.C. rejects the traditional rule that "an agreement to agree is unenforceable" and rejects defeating sales agreements on the ground of indefiniteness where the missing or indefinite term is price. In light of *Allen*, *Davis*, and other cases, this court will not by judicial fiat extend that codified rejection to agreements other than those governed by Article 2 of the U.C.C.

Finally, Nuline cites authorities, including the Restatement of Contracts (Second), for the proposition that part performance under a contract may establish that a contract is enforceable. First, it should be observed that in the majority of "to be agreed upon" disputes, there has been some performance by the parties under their overall contract. That is so because most of these contracts contain definite price terms for a portion of the contract period and then contain "to be agreed upon" clauses for a future stage or period, such as a lease renewal or extension, or a new price level after a certain time or occurrence, or payment of some form of compensation for new services to be later rendered. Therefore, to state that the parties have partially performed under their contract is a truism. Second, it is important to observe that most authorities that give any effect to part performance in "to be agreed upon" cases do so on the theory that part performance can furnish some evidence of intent to be bound by the contract and of the meaning the parties have given to missing or indefinite terms.

Here, as noted above, the parties obviously have performed under their January 1, 1988, asset sale and loan agreement. In fact, many parts of that 34-page contract and its numerous accompanying documents have been executed. Further, the parties have performed the claims processing aspect of the contract under paragraph 17. But in this case those performances furnish no clue to the parties' intentions regarding the amount of the variable fee to be paid Nuline by Media General for processing claims during the second five-year period. Although Nuline has continued to process claims and Media General has continued to pay the agreed-upon fixed fee, Media General has not paid any variable fee during the second five-year period, nor have the parties been able to agree on an amount. While going forward with other parts of the contract and acknowledging that Nuline is owed something beyond the fixed fee for its claims processing during the second five-year period, Media General has consistently repudiated paragraph 17(b) as unenforceable. 17A Am. Jur. 2d, *Contracts*, § 35. Here, the focus is on that part of the contract that provides for a variable fee in "an amount to be mutually agreed upon" for the second five years. The remainder of the contract and the parties' performance or part performance of those terms is immaterial to a determination of the enforceability of the second portion of paragraph 17(b)(i).

Finally, the court agrees with Media General that Nuline has an adequate remedy in quantum meruit. This is the remedy provided to one who furnishes labor to another under a contract which is void or unenforceable. *Marine Development Corp. v. Rodak*, 225 Va. 137, 300 S.E.2d 763 (1983). In quantum meruit, the plaintiff may recover the reasonable value of its services.

For the foregoing reasons, Media General's demurrer to Count I of the amended motion for judgment will be sustained, and that claim will be dismissed. The parties may proceed to trial on Nuline's quantum meruit claim.