**BEAZER HOMES CORP., Plaintiff,**

**v.**

**VMIF/ANDEN SOUTHBRIDGE VENTURE, LPI Southbridge, L.P., and LPI Southbridge Corp. Defendants.**

**No. CIV.A. 02–1637–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 6, 2002.

---

William Thomas Freyvogel, Adams Porter & Radigan Ltd., McLean, VA, for plaintiff.

Margaret Melissa Glassman, McGuire-Woods, L.L.P., McLean, VA, for defendants.

## ORDER

ELLIS, District Judge.

The matter came before the Court on defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed.R.Civ.P. At issue are the nature and extent of the obligations arising out of an August 6, 2002 Letter of Intent between plaintiff Beazer Homes Corp. ("Beazer"), a Tennessee corporation engaged in the business of real estate development and homebuilding, and defendant VMIF/Anden Southbridge Venture ("VMIF"), an Illinois general partnership and owner of the land at issue,[1] regarding the potential purchase and development of a 977.5 acre parcel of land in Prince William County, Virginia. The motion to dismiss was briefed by the parties, and following oral argument, the motion was granted in part and denied in part. This Order records this ruling and the reasons for it.

### I.

The relevant facts as alleged in the complaint are as follows: The Letter of Intent represents, in its own terms, a "brief expression of the parties' preliminary intent with regard to some, but less than all, of the key terms for the Contract for the Property." In fourteen numbered paragraphs, the Letter of Intent, which was signed by the parties' authorized representatives, details a number of terms for the potential contract for the sale of the property, including (i) the number, type and

---

1. The remaining defendants, LPI Southbridge, L.P., an Illinois limited partnership, and LPI Southbridge, Corp., a Delaware corporation, are general partners in VMIF. The defendants are collectively referred to throughout as "VMIF."

price of the lots to be sold, (ii) a four part settlement schedule with a total purchase price of over $24 million, (iii) the initial deposits to be paid by Beazer, and (iv) the conditions precedent to the first settlement.

Central to the dispute at hand is the final substantive paragraph of the Letter of Intent, which describes the Letter of Intent's intended effect and imposes certain specific obligations on the parties. Under this paragraph, both parties agree to "negotiate in good faith to [r]each a mutually acceptable Contract based on the terms and conditions outlined herein." If, however, the parties are unable to "negotiate and fully execute" a contract for the property by August 16, 2002, then, as the Letter of Intent specifically states, neither party "shall have any further rights or obligations to the other, *except as set forth in this paragraph* and Paragraph 14 [2] hereof." (emphasis added). This final paragraph also reiterates that "the parties specifically agree that all terms of this paragraph and Paragraph 14 hereof are strictly binding and agree[d] to." These terms include the following: (i) both parties must maintain the confidentiality of the terms and conditions of the Letter of Intent and the subsequent contract, (ii) VMIF must "cease marketing the Property," and must "cease and not commence discussions ... with other parties regarding the sale of the Property," (collectively, the "duty not to market") and (iii) the parties agree to "negotiate in good faith" to a contract on the terms and conditions of the Letter of Intent. Importantly, this paragraph in the Letter of Intent further clarifies that "[n]o binding agreement for the purchase and sale of the Property shall exist until the Contract shall be negotiated and executed."

On August 14, 2002, the parties met to negotiate a contract for the sale of the property based on the terms included in the Letter of Intent. Beazer alleges that the parties reached an agreement on all the key terms of the contract, and agreed that VMIF would draft a revised contract to be executed by the parties. The next day, however, VMIF announced its intent to make changes with regard to the required deposits of funds and the conditions precedent, which changes were contrary to the terms stated in the Letter of Intent. By an agreement dated August 15, 2002, the parties extended the time for negotiation of the contract from August 16 until August 23, 2002. Further negotiations did not succeed, and VMIF informed Beazer on August 22, 2002 that its position on the required deposits and the conditions precedent remained unchanged and, moreover, that questions regarding zoning had arisen. VMIF did not respond to Beazer's further attempts to negotiate.

On September 20, 2002, VMIF informed Beazer that during the week of September 9, 2002, VMIF had executed a contract to sell the property to an unidentified third party. Three days later, Beazer sent VMIF a formal written notice charging that VMIF had breached it obligations under the Letter of Intent to negotiate in good faith and to refrain from marketing the property during the period the Letter of Intent was in effect. On October 31, 2002, Beazer filed a complaint against VMIF in the Circuit Court of Prince Williams County, Virginia, which was removed by VMIF to this Court on November 5, 2002, pursuant to 28 U.S.C. § 1332.[3]

---

**2.** Paragraph 14, which prohibits the purchaser from hiring, soliciting or consulting with agents and employees of the seller until after the final settlement, is not at issue in this dispute.

**3.** Although not material to the disposition of the issues at bar, it appears that Beazer also

Beazer's removed motion for judgment (hereafter the "complaint") contains five counts, as follows:

Count I: Declaratory Judgment, seeking a declaration

(a) that the Letter of Intent remains in full force and effect,

(b) that VMIF breached the Letter of Intent by failing to negotiate in good faith,

(c) that VMIF breached the Letter of Intent by failing to cease marketing the property,

(d) that VMIF breached the Letter of Intent by failing to cease and not commence discussions with other parties regarding the sale of the property, and

(e) that Beazer is entitled to proceed with the purchase of the Property under the terms and conditions of the Letter of Intent.

Count II: Specific Performance, seeking specific performance of the Letter of Intent.

Count III: Injunctive Relief, seeking an injunction preventing VMIF from selling the property to a third party.

Count IV: Breach of Contract, seeking damages for VMIF's breach of the Letter of Intent.

On November 15, 2002, VMIF filed its motion to dismiss the complaint in its entirety for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P. After a review of the parties' briefs and oral arguments, the motion to dismiss was granted in part and denied in part for the reasons stated below.

filed a *lis pendens* in state court based on this

## II.

In considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, courts must construe the complaint in the light most favorable to the plaintiffs, read the complaint as a whole, and take the facts asserted therein as true. Rule 12(b)(6), Fed. R.Civ.P.; *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). All reasonable inferences must be drawn in favor of the nonmoving party, and "a count should be dismissed only where it appears beyond a reasonable doubt that recovery would be impossible under any set of facts which could be proven." *America Online, Inc. v. Great-Deals.Net,* 49 F.Supp.2d 851, 854 (E.D.Va. 1999) (citing *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992)). In deciding a Rule 12(b)(6) motion, courts may rely only on the allegations in the complaint and those documents attached to it or incorporated by reference. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683.

Each count merits separate consideration, with analysis appropriately beginning with Count IV, the central claim alleging that VMIF is in breach of it obligations under the Letter of Intent. Under the terms of the Letter of Intent, only those "rights and obligations" set forth in the final substantive paragraph and paragraph 14 were binding on the parties without further negotiation. Beazer alleges that VMIF is in breach of these surviving obligations, namely the duty of confidentiality, the duty not to market the property, and the duty to negotiate in good faith to a contract on the terms of the Letter of Intent.

■ A review of the complaint and the attached materials indicates that Beazer

suit.

has stated a claim in Count IV for breach with regard to the duty of confidentiality and the duty not to market the property. In this respect, Beazer alleges that VMIF breached these duties by marketing the property and entering into discussions with third parties regarding the sale of the property prior to the August 23, 2002 expiration of the Letter of Intent. According to the complaint, VMIF executed a contract for the sale of the property with a third party during the week of September 9, 2002, that is, shortly after the expiration date. This allegation supports a reasonable inference that VMIF marketed the property to third parties prior to the expiration of the Letter of Intent, in violation of its obligation to refrain from doing so, and in likely violation of its duty of confidentiality. Thus, Beazer has adequately alleged a violation of the Letter of Intent in these respects.

■ Count IV also alleges that VMIF breached its duty to negotiate the terms of a contract for the sale of the property in good faith. Beazer acknowledges, as it must, given the Letter of Intent's plain language, that the parties did not intend to execute a binding contract for the sale of the property through the Letter of Intent itself. On this point, the Letter of Intent is unambiguous, stating that "[n]o binding agreement for the purchase and sale of the Property shall exist until the Contract shall be negotiated and executed." Nonetheless, Beazer asserts that VMIF breached its duty to negotiate in good faith towards a contract, and requests damages for that breach. Thus, the central question presented with regard to this claim is whether the alleged duty to negotiate in

good faith to reach a contract is enforceable under Virginia contract law.

■ It is well settled under Virginia law that agreements to negotiate at some point in the future are unenforceable. *See Premier Signatures Int'l, Inc. v. Feld Entm't Prod., Inc.*, 1999 WL 427199 at *3 n. 4 (4th Cir. June 25, 1999); *W.J. Schafer Assoc., Inc. v. Cordant, Inc.*, 254 Va. 514, 519–20, 493 S.E.2d 512 (1997); *Allen v. Aetna Cas. and Sur. Co.*, 222 Va. 361, 363–64, 281 S.E.2d 818 (1981).[4] To form a binding contractual obligation, there must be "mutual assent of the contracting parties to terms reasonably certain under the circumstances." *See Schafer*, 254 Va. at 519, 493 S.E.2d 512 (citing *Allen*, 222 Va. at 364, 281 S.E.2d 818). Mere "agreements to agree in the future" are "too vague and too indefinite to be enforced." *Id.* From these settled principles, it follows that the question presented on this motion to dismiss is whether the agreement as presented in the complaint and the accompanying Letter of Intent reflects the parties' unambiguous intent to be bound or not to be bound to the terms set forth in the Letter of Intent. If the Letter of Intent unambiguously reflects that the parties did not intend to be bound by the terms of the Letter of Intent, then the provision in the Letter of Intent in which the parties agree to negotiate a contract amounts to no more than agreement to negotiate in the future and is, therefore unenforceable under Virginia law. *Id.* at 520, 493 S.E.2d 512. In this case, as in *Schafer*, there is "no mutual commitment by the parties, no obligation . . . to sell . . .

---

4. *See also Davis v. Cleve Marsh Hunt Club*, 242 Va. 29, 34–35, 405 S.E.2d 839 (1991); *Reston Recreation Center Assoc. v. Reston Prop. Investors Ltd. P'ship*, 238 Va. 419, 428, 384 S.E.2d 607 (1989); *Kay v. Professional Realty Corp.*, 222 Va. 348, 351, 281 S.E.2d 820 (1981); *Brown Enters., Inc. v. Hockman*, 50 Va. Cir. 237, 240 (1999); *John P. Forest, D.D.S., P.A., Profit Sharing Plan v. Kentucky–Ohio Gas Acquistion Corp.*, 1999 WL 33117234, *2, 1999 Va. Cir. Lexis 701 at *5 (November 23, 1999).

or to purchase,"[5] but instead, as the Letter of Intent correctly states, simply an agreement to "negotiate in good faith to [r]each a mutually acceptable Contract based on the terms and conditions outlined herein." Under settled Virginia law, therefore, this provision in the Letter of Intent is merely an unenforceable agreement to agree.

Despite this clear Virginia precedent, Beazer contends that the agreement to negotiate is enforceable as a binding preliminary agreement, relying chiefly on *Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401 (4th Cir.2002). In *Burbach*, the Fourth Circuit panel opinion concluded that the letter of intent there in issue was ambiguous on its face as to the parties' intent to be bound by its terms, and therefore vacated the district court's dismissal order and remanded the case for the district court to determine the parties' intent on a more complete record. *Id.* at 406. The panel opinion noted that West Virginia law, applicable in that case, is silent on the subject of preliminary agreements which, though incomplete, are intended by the parties to be binding and enforceable. *Id.* at 408–09. The Fourth Circuit panel "suspect[ed]" that West Virginia law might well follow the "modern trend in contract law" and hold such agreements enforceable, *id.* at 407 (citing *Teachers Ins. and Annuity Assoc. of America v. Tribune Co.*, 670 F.Supp. 491 (S.D.N.Y.1987)). Thus, the Fourth Circuit panel opinion "encouraged the district court to ensure" on remand that West Virginia did not follow the Kentucky rule, the traditional "all or nothing" approach under which the contract is

either enforceable as a binding contract to consummate the transaction or it is unenforceable as something less. *Id.* at 409 n. 7 (citing *Cinelli v. Ward*, 997 S.W.2d 474, 478 (Ky.1998)).

Beazer contends that the Letter of Intent in this case represents a "Type II agreement," as discussed in *Burbach*, under which the parties agree to "negotiate the open issues in good faith in an attempt to reach the contractual objective within the agreed framework," and are "barred from renouncing the deal, abandoning the negotiations, or insisting on conditions that do not conform to the preliminary agreement." *Id.* at 407. According to *Burbach*, a party to a Type II agreement "may demand that his counter-party negotiate the open terms in good faith toward a final contract." *Id.* This is precisely the relief that Beazer requests.

Yet, in the end, Beazer's reliance on *Burbach* is unavailing. The Letter of Intent at issue here must be interpreted according to Virginia law,[6] not the West Virginia law applicable in *Burbach.* And, Virginia law, unlike West Virginia law, is not silent on this subject, but rather clearly endorses the traditional rule that such contracts are unenforceable. Indeed, Virginia law in this respect is uniform and longstanding. *See Premier Signatures*, 1999 WL 427199 at *3 n. 4. As the recent *Schafer* case makes clear, this rule bars the enforcement of a Type II preliminary agreement. In *Schafer*, the Supreme Court of Virginia held that the agreement in that case to "negotiate in good faith in a timely manner a Subcontract Agreement,"

5. *Schafer*, 254 Va. at 520, 493 S.E.2d 512.

6. Under the rule in *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), a federal court sitting in Virginia and exercising diversity jurisdiction applies Virginia choice of law rules. Under Virginia choice of law rules, Virginia law governs here because Virginia is the place where the contract was made and is to be performed. *See Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 177 S.E.2d 610 (1970).

in essence a Type II agreement to negotiate a subcontract in the future along certain established terms, was unenforceable as a mere agreement to agree. *See Schafer*, 254 Va. at 519–20, 493 S.E.2d 512. Given this recent, clear, and controlling precedent, there is no doubt that Virginia law does not currently recognize binding preliminary agreements as described in *Burbach*.[7]

Furthermore, even assuming, *arguendo*, *Burbach's* applicability, Beazer cannot make the required threshold showing for a Type II contract, that the parties intended to be bound by the Letter of Intent. As noted in *Burbach*,

> It is fundamental to contract law that mere participation in negotiations does not create a binding obligation, even if agreement is reached on all terms. More is needed than agreement on each detail—the parties must have intended to enter into a binding agreement.

*Burbach*, 278 F.3d at 406. This emphasis on the intent of the parties is echoed in *Schafer*, which requires "mutual assent" or "mutual commitment" by the parties to the terms set out in the agreement. *Schafer*, 254 Va. at 519–20, 493 S.E.2d 512. On this point, the *Burbach* panel opinion found the letter of intent in that case ambiguous as to the parties' intent, even though the letter of intent in *Burbach* specifically stated that "Sellers and Buyers, intending to be legally bound, hereby agree to the contemplated transaction based on the follow-

ing terms and conditions." *Burbach*, 278 F.3d at 404, 406. Significantly, the Letter of Intent at issue here stands in sharp contrast to the *Burbach* letter; it states in the following unambiguous language the parties' intent not to be bound regarding the sale of the property until the contract is negotiated.

> The terms of this Letter of Intent are a brief expression of the parties' preliminary intent with regard to some, but not al, of the key terms for the Contract for the Property. No binding agreement for the purchase and sale of the Property shall exist until the Contract shall be negotiated and executed. However, the parties hereby specifically agree that all terms of this paragraph and Paragraph 14 hereof are strictly binding and agree[d] to, and not subject to further discussion . . . .

Thus, it is clear that while the parties intended to be bound by certain limited terms included in the two named paragraphs, they plainly did not intend to be bound to the numerous potential contract terms, such as price, scheduling, conditions precedent, and deposits, which are detailed elsewhere in the Letter of Intent.[8] Therefore, this agreement cannot be characterized as a Type II binding preliminary agreement, even were Virginia law to recognize such agreements. The mere agreement to negotiate established by the Letter of Intent is precisely the type of agreement to agree that has con-

---

7. Under the rule in *Erie*, federal courts sitting in diversity apply state substantive law as announced by the State's highest court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When, as here, there is controlling state authority, federal courts sitting in diversity "rule upon state law as it exists and do not surmise or suggest its expansion." *Burris Chemical, Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir.1993). Federal courts should "apply state law" and de-

cline invitations to "participate in an effort to change it." *Id.*

8. Thus, Beazer's efforts to show that all of the material terms of the contract were established with reasonable certainty through the Letter of Intent and accompanying documents are of no avail; even if the parties agreed on every detail of the potential contract, the requisite intent to be bound by the Letter of Intent is lacking.

sistently and uniformly been held unenforceable in Virginia. *See Premier Signatures,* 1999 WL 427199 at *3 n. 4.

In sum, with regard to Count IV, Beazer has adequately stated a claim to the extent that Beazer alleges a breach of the duty of confidentiality and the duty not to market the property. Thus, these aspects of Count IV survive the motion to dismiss. However, to the extent that Count IV alleges a breach of the duty to negotiate, that duty is unenforceable under Virginia law, and VMIF's motion to dismiss must be granted with respect to this aspect of Count IV.

■ In Count II, Beazer requests specific performance of the Letter of Intent. To invoke the "extraordinary" remedy of specific performance, Beazer must first "prove [the] contract enforceable at law." *Robertson v. Gilbert,* 219 Va. 620, 624, 249 S.E.2d 787 (1978). In this respect, Beazer seeks an order directing VMIF to enter into good faith negotiations towards a contract for the sale of the property to Beazer in accordance with the terms of the Letter of Intent. As noted, the duty to negotiate is unenforceable, thus specific performance of that duty cannot be granted. Furthermore, as regards the duty not to market the property and the duty of confidentiality, both of these duties ended on the August 23, 2002 expiration date of the Letter of Intent. Though Beazer may still sue for damages caused by violations of these duties prior to the August 23 expiration date, specific performance can only be granted as to "the very (specific) thing called for by the contract." *Id.* Thus, specific performance of the duty of confidentiality and the duty not to market cannot be granted beyond the expiration date for those duties set by

the agreement of the parties, which has passed. Accordingly, Count II must be dismissed.

■ In Count III, Beazer requests injunctive relief, prohibiting VMIF from selling the property to a third party or taking any action which would prevent Beazer from proceeding with the purchase of the property under the terms of the contract. As noted, however, Beazer has no right to purchase the property; the Letter of Intent represents at most an unenforceable agreement to negotiate in good faith towards such a contract. Furthermore, VMIF has no obligation to refrain from marketing the property after the August 23, 2002 expiration of the Letter of Intent. In short, Beazer has no right to purchase the property, and no right stemming from this suit [9] to prevent or delay its transfer to a third party. Accordingly, Count III must be dismissed.

■ Finally, in Count I Beazer requests a declaratory judgment regarding various rights and duties allegedly established in the Letter of Intent. First, to the extent that Beazer seeks a declaration that the Letter of Intent remains in full force and effect, this aspect of Count I must be dismissed. By agreement of the parties, the key terms of the Letter of Intent, including the price, settlement schedule, and other details, expired on August 23, 2002. Thus, the Letter of Intent is clearly not still in full force and effect, and this aspect of Count I must be dismissed.

Second, Beazer seeks a declaration that VMIF breached its duty to negotiate. Because this duty to negotiate is unenforceable, VMIF cannot be declared in breach of

---

**9.** Not addressed in this ruling is the effect of the validity of the *lis pendens* filed in state court.

it. Thus, Count I must also be dismissed with regard to the duty to negotiate.

 Third, a declaration that VMIF breached its duty of confidentiality and its duty not to market the property involves only an adjudication of past conduct because VMIF's obligations in this regard do not continue past the August 23, 2002 expiration of the Letter of Intent. Declaratory judgment is "not an appropriate remedy for past misconduct." *SBA Communications, Inc. v. Zoning Comm'n of Town of Brookfield,* 96 F.Supp.2d 139 (D.Conn.2000).[10] In general, cases holding that declaratory judgment is not proper solely to adjudicate past misconduct rely on concerns regarding misuse of the declaratory judgment remedy in the form of races to the courthouse and forum manipulation. *See Dunn Computer Corp. v. Loudcloud, Inc.,* 133 F.Supp.2d 823, 829–30 (E.D.Va.2001). These concerns do not present themselves here. In any event, a declaratory judgment is a discretionary remedy, which federal courts may decline to provide where appropriate. *See Public Affairs Assoc., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). In general, this remedy is only appropriate when it would "serve a useful purpose in clarifying and settling the legal relations in issue" to guide the parties in the future. *Dunn,* 133 F.Supp.2d at 829 (citing *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.,* 139 F.3d 419, 422 (4th Cir.1998)). At oral argument, Beazer's counsel correctly conceded that it "would be difficult to do anything with" a declaration that stated only that VMIF violated its duty of confidentiality and its duty not to market. Such a declaration would serve no useful purpose, such as guiding the parties' future conduct in continuing to perform under the contract. Accordingly, Beazer has not shown that declaratory judgment concerning these duties would serve a useful purpose, and thus this aspect of Count I must be dismissed.

Finally, to the extent that Beazer seeks a declaration that Beazer is entitled to proceed with the purchase of the Property under the terms of the Letter of Intent, no such right is established by the Letter of Intent. The provisions containing the purchase terms all expired on August 23, 2002, and were, at any rate, never intended as binding on the parties. Beazer has, at most, an unenforceable right to negotiate towards a purchase contract. In sum, therefore, Beazer's Count I claim for declaratory judgment must be dismissed in this respect and in its entirety.[11]

Accordingly, and for the reasons stated from the Bench,

It is **ORDERED** that defendants' motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P. is **GRANTED IN PART AND DENIED IN PART**, as follows.

The motion to dismiss is **GRANTED** with respect to Count I (Declaratory Judgment), Count II (Specific Performance), Count III (Injunctive Relief).

The motion to dismiss is **GRANTED IN PART AND DENIED IN PART** with respect to Count IV. The Motion is **GRANT-**

---

10. *See also Crown Cork and Seal Company, Inc. v. Borden Inc.,* 779 F.Supp. 33, 35 (E.D.Pa.1991) (holding that declaratory judgment is inappropriate solely to adjudicate past conduct). Virginia law regarding declaratory judgments under Va.Code § 8.01–184 *et seq.* is in accord. *See USAA Cas. Ins. Co. v. Randolph,* 255 Va. 342, 347, 497 S.E.2d 744 (1998) (holding that declaratory judgment is not proper when the case involves "claims and rights that had accrued and matured when the bill of complaint was filed," if "other remedies were available").

11. This is a modification of the Bench ruling.

**ED** with respect to Count IV to the extent that Count IV relies on a breach of the duty to negotiate. The Motion is **DE-NIED** with respect to Count IV to the extent that Count IV relies on a breach of duties other than the duty to negotiate.

The Clerk is directed to send a copy of this Order to all counsel of record.