144

## CIRCUIT COURT OF THE CITY OF NORFOLK

Marketplace Holdings, Inc.

v.

Camellia Food Stores, Inc.

February 27, 2004

Case No. (Law) L03-2601

BY JUDGE EVERETT A. MARTIN, JR.

On July 24, 2003, the chairmen of the plaintiff and defendant signed a letter of intent concerning the plaintiff's proposed purchase of the defendant and its subsidiaries that fixed the purchase price and provided that the acquisition would be a stock purchase. The letter of intent provided in paragraph 5 that the "definitive Stock Purchase Agreement" would include representations and warranties "customary in transactions of this nature, including, without limitation representations as to" ten general categories and "other items to be agreed upon in the Definitive Documentation."

Paragraph 6 provided "The parties will use good faith efforts to execute the Stock Purchase Agreement within twenty-eight (28) days of the execution of this Letter of Intent." Paragraphs 9 and 10 contained confidentiality and "no solicitation" provisions. Paragraph 11 provided in pertinent part:

> *Binding Effect.* This Letter of Intent is intended to evidence the current intentions of the parties with respect to the transactions contemplated hereby as reflected in discussions between us to date, and it is expressly understood and agreed that (a) this Letter of Intent is not intended to, and does not, constitute an agreement to consummate the transactions contemplated hereby or enter into the Definitive Documentation and (b) transactions contemplated hereby by virtue of (i) this Letter of Intent ... unless and until the Definitive Documentation is executed and delivered; provided, however, that

the respective obligations of the Shareholders, the Company, and the Purchaser contained in this paragraph and paragraphs 9, 10, 13, 14, and 16 will be binding upon the Shareholders, the Company, and Purchaser as the case may be, when each has signed a copy of this Letter of Intent in the manner provided below.

Paragraph 13 provided that the parties' obligations (other than those of paragraphs 9 and 14) would terminate ninety days after execution, I assume, of the letter of intent. Paragraph 14 provided that "Except to the extent specifically provided herein ... to the contrary" each party shall "bear its own expenses – financing, legal, accounting, and otherwise – in connection with the preparation of this letter . . . and the consummation of all of the transactions contemplated hereby. . . ." A stock purchase agreement was never executed.

The plaintiff has filed a three count motion for judgment seeking an unspecified amount of damages for breach of the letter of intent. The defendant has demurred. I sustain the demurrer to Count I and the failure to quantify damages; I overrule the demurrer to Counts II and III.

## Count I

The plaintiff claims the defendant breached the letter of intent by failing to: (1) timely review drafts of the stock purchase agreement, (2) obtain counsel to assist in the transaction, (3) provide comments on the drafts of the stock purchase agreement, and (4) "pursue good faith negotiations." The plaintiff alleges that a stock purchase agreement would have been executed if the defendant had negotiated in good faith.

Paragraph 11 of the letter of intent clearly provides that it is not enforceable in the manner the plaintiff claims. Even in the absence of paragraph 11, an agreement to negotiate is not enforceable in Virginia. In Virginia, "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract." *Allen v. Aetna Casualty & Surety,* 222 Va. 361, 364, 281 S.E.2d 818 (1981). See also *W. J. Schafer Assoc., Inc. v. Cordant, Inc.,* 254 Va. 514, 493 S.E.2d 512 (1997); *Davis v. Cleve Marsh Hunt Club,* 242 Va. 29, 405 S.E.2d 839 (1991); *Reston Recreational Center Assoc. v. Reston Property Investors,* 238 Va. 419, 384 S.E.2d 607 (1989); *Kay v. Professional Realty Corp.,* 222 Va. 348, 281 S.E.2d 820 (1981); *Beazer Homes Corp. v. VMIF/Anden,* 235 F. Supp. 2d 489 (E.D. Va. 2002).

By its very nature, an agreement to negotiate in good faith shows that the parties have not mutually assented to reasonably certain terms of a contract.

An agreement to negotiate in good faith itself is not ambiguous, but it is vague. What is "to negotiate in good faith" and what useful purpose is served by compelling negotiations under threat of a suit for damages when one party, for whatever reason, has lost interest? It is pure speculation to believe a stock purchase agreement would have been executed if the parties negotiated in good faith. It would be rank conjecture to assess damages as no one could predict what, if anything, further negotiations would accomplish. Many a business deal goes off the rails during negotiations.

The plaintiff relies on several decisions from courts outside of Virginia, which I have read, that have adopted the "modern" rule that agreements to negotiate are enforceable. I do not find them persuasive.

In *EG&G v. Cube Corp.*, 63 Va. Cir. 634, 2002 Va. Cir. LEXIS 444 (Fairfax County 2002), the only Virginia case cited for this proposition, Judge Ney did not find that Virginia would recognize a cause of action for breach of an agreement to negotiate in good faith. Rather, he concluded after hearing three days of evidence that the several documents the parties executed and their intent and performance provided reasonable certainty about the essential contractual terms.

The plaintiff relies primarily on *Copeland v. Baskin Robbins*, 96 Cal. App. 4th 1251, 117 Cal. Rptr. 2d 875 (2002), in which the California Court of Appeals recognized a new cause of action for breach of a contract to negotiate in good faith. It distinguished such a contract from an "agreement to agree," a distinction, to my mind, without a significant difference. It is an ill defined cause of action founded on a nebulous agreement. It injects uncertain liability into contract negotiations; the jilted party can easily allege a failure to negotiate in good faith. It infringes on a party's freedom to withdraw from negotiations. Freedom *not* to contract is an integral part of the common law freedom to contract.

The problem the court addressed in *Copeland*, the substantial expenses a party incurs in protracted and complex negotiations, can easily be addressed by the parties themselves. They are free to negotiate and include in an agreement the manner in which their expenses will be paid if the proposed transaction is not concluded and the circumstances under which one party will be liable to the other. Indeed, the parties did so here in paragraph 14 with respect to certain expenses. They provided each party would bear its own expenses.

The plaintiff asks the court to create a new cause of action to relieve it of the consequences of its bargain. I decline to do so.

## Counts II and III

In these Counts, the plaintiff alleges breaches of the non-solicitation and confidentiality provisions of paragraphs 9 and 10 of the letter of intent. Pursuant to paragraph 11, those two paragraphs were binding on the parties. The plaintiff has alleged sufficient facts to support its allegations. As the plaintiff has sufficiently pleaded a violation of the confidentiality provision of the letter of intent, I need not determine at this time what rights, if any, the plaintiff may have under the letters of May 2, 2003.

## The Ad Damnum

The *ad damnum* clause does not request a specific amount of damages, but, rather, "compensatory damages against Camellia in an amount to be proven by the evidence at trial." In *Stephens v. White*, 2 Va. (2 Wash.) 203 (1796), a legal malpractice action in which no specific amount of damages was stated, Judge Lyons held:

> In actions which found entirely in damages, it is absolutely necessary at common law to lay them in the declaration; but in debt it is otherwise. The plaintiff ought to know what are the damages he has sustained, and if he lay none, he cannot say that he has sustained any.

2 Va. (2 Wash.) at 212. President Pendleton concurred in that opinion. At common law, an action for debt "lies for the recovery of *money*, or its equivalent, in sums certain, or that can readily be rendered certain by actual computation, while all other actions are for recovery of *damages*, or property, or both." Burks, *Pleading and Practice*, § 68 (1912).

## Motion for a Protective Order

The plaintiff has issued subpoenas *duces tecum* to several corporations that are not parties to this case. The subpoenas request the production of numerous records. The plaintiff has also served interrogatories and requests for production of documents on the defendant.

As the plaintiff has no claim for "benefit of the bargain" damages because of paragraph 11 of the letter of intent, nor a claim for many elements of reliance damages because of paragraph 14, I do not know what items of damages the plaintiff claims beyond nominal damages. Before I require the

production of some or all of the documents requested, the plaintiff shall state specifically the items of damages it claims and the amount sought for each item. This may be done in an amended motion for judgment or in response to a motion for a bill of particulars.

Mr. Devine shall prepare the appropriate order allowing the plaintiff twenty-one days from the date of this letter to file an amended motion for judgment, provided that no cause of action for breach of an agreement to negotiate in good faith shall be included therein.