## Harbour Enterprises, Inc.

### v.

## James J. Ferro

Record No. 821754

March 7, 1986

Present: Cochran, Poff, Compton, Stephenson, Russell and Thomas, JJ.

*Joseph L. Lyle, Jr. (Pickett, Lyle, Siegel, Drescher & Croshaw,* on brief), for appellant.

*William A. Cox, III (Kellam, Pickrell & Lawler,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

The narrow issue in this appeal is whether a landlord is vicariously liable to his tenant's business invitee for personal injuries resulting from an assault by the tenant's employee, where the landlord permitted a liquor license in its name to remain posted on the demised premises.

On July 28, 1980, about 11:00 p.m., appellee James J. Ferro was injured while entering an outdoor patio lounge, a part of the Ivanhoe Hotel situated on the Virginia Beach Oceanfront. Ferro was beaten brutally about the head in an unprovoked attack by Kevin Cunningham, a bouncer employed by the lessee of the premises.

Appellant Harbour Enterprises, Inc. owned the property, which included a hotel, a restaurant, and the patio lounge where alcoholic beverages were served during the vacation season. By written lease dated January 31, 1980, the owner demised the premises to Joseph E. Burke, James R. Mize, and Walter G. Hutts, III, who operated as Bur-Mi-Hut, Ltd. The lease term was two years, to commence April 1, 1980. The tenant's seasonal business did not "go into operation" until June 1980, with Robert Talley managing the patio lounge for the lessee.

For some time prior to the date of the lease to Bur-Mi-Hut, the owner had been licensed by the Virginia Alcoholic Beverage Control (ABC) Commission to dispense beer, wine, and mixed beverages in the restaurant and patio. According to Dominic L. Garcia, the principal stockholder in Harbour Enterprises, Bur-Mi-Hut agreed to obtain its own ABC license by the time the business was scheduled to open in June. The lessee, however, failed to obtain a new license and the previous license issued to Harbour Enterprises

remained hanging "behind the bar on the wall" at the time of the incident in question.

In September 1980, the plaintiff filed the present personal injury suit against Cunningham, Burke, Talley, Harbour Enterprises, and Bur-Mi-Hut seeking recovery of compensatory and punitive damages. Cunningham failed to file a pleading and was in default. Following a bench trial, the court entered judgment against all defendants for $25,000 compensatory damages. The court also assessed against the defendants, except Harbour Enterprises, a punitive damage award of $10,000.

The trial court fixed liability on Harbour Enterprises upon the theory that the evidence showed the owner, knowing the lessee had no ABC license in its own name, permitted the lessee to operate under the owner's license when the owner knew that such a license could not lawfully be transferred from one licensee to another. Thus, according to the court below, the operation of the business by Bur-Mi-Hut "legally" was under the control of the ABC licensee, Harbour Enterprises, and the licensee was vicariously liable for the acts of the tenant's employee. Harbour Enterprises has appealed, the judgment against the remaining defendants having become final.

Generally, a landlord is not liable to third persons for the negligent or willful acts of the tenant or the tenant's employees. This is because the owner of leased premises ordinarily has surrendered control over the premises to the lessee, the property is in the possession of the lessee, and the landlord, merely because of his ownership, does not have any direct contact with those who are upon the demised premises at the invitation of the tenant. *See* 3A *Thompson on Real Property*, § 1241 at 243-46 (1981 Repl. Vol.); Harkrider, *Tort Liability of a Landlord*, 26 Mich.L.Rev. 531, 532-33 (1927-28). *See also Oliver* v. *Cashin*, 192 Va. 540, 543, 65 S.E.2d 571, 572-73 (1951); *Smith* v. *Wolsiefer*, 119 Va. 247, 252-53, 89 S.E. 115, 117 (1916); Restatement (Second) of Property (Landlord & Tenant) § 18.4 (1977); Restatement (Second) of Torts § 379A (1965).

Moreover, the relationship between landlord and tenant is not the same as that existing between principal and agent. There is a more personal connection between the latter than between the former. "The landlord can lease his property, live his life apart from the tenant, and forget all about him except when rent is due. The tenant, on the other hand, goes about his business free from

direction by the landlord, and if he commits a personal wrong it is his own. The maxim *respondeat superior* has no application to the landlord-tenant relation." 26 Mich.L.Rev. at 533.

In the present case, Harbour Enterprises argues the trial court erred in fixing liability upon it for the criminal conduct of the tenant's employee merely because the tenant failed to obtain an ABC license in its own name and merely because the owner permitted its license to remain posted on the demised premises. Harbour Enterprises contends the evidence conclusively shows that it exercised no direction or control over Bur-Mi-Hut's operation of the premises, that it had no right to control such operations, and that imposition of vicarious liability upon the landlord under these circumstances is improper. We agree.

Under the terms of the commercial lease in question, possession and control of the premises were granted the tenant. Testimonial evidence showed the tenant, in fact, occupied the premises and "controlled the whole operation." The municipal business license for the premises was issued in May 1980 to Burke and Hutts, trading as the "Ivanhoe Motel." Money received from the business conducted on the premises was deposited into Bur-Mi-Hut's bank account. Garcia, a Virginia Beach resident, did not participate in hiring Bur-Mi-Hut's employees, including Cunningham. Garcia visited the premises only occasionally for dinner or cocktails and "sometimes" to collect rent.

Garcia's cavalier handling of the ABC license issued to Harbour Enterprises is insufficient basis, standing alone, to support a finding of vicarious liability against Garcia's corporation. The purpose of the Alcoholic Beverage Control Act (the Act), Code § 4-1 to -118.20:1, is, among other things, to regulate and control the sale, possession, and use of alcoholic beverages. *Miller* v. *Commonwealth*, 172 Va. 639, 646, 2 S.E.2d 343, 346 (1939). The Act mandates no statutory tort liability and creates no principal-agent relationships. As Harbour Enterprises argues, the only control contemplated by the Act is the state's control over the licensee under the provisions of the Act. Therefore, the fact that a licensee may have violated that part of the Act which prohibits transfer of a license from one person to another, Code § 4-34(b), is irrelevant to a determination whether civil liability for damages may properly be assessed against such licensee. Of course, we do not have for decision in this case the question whether sanctions

under the Act may be imposed against the licensee under these circumstances.

Accordingly, we hold that the trial court erred in entering a judgment for compensatory damages against Harbour Enterprises. The portion of the judgment appealed from which fixes liability against Harbour Enterprises will be reversed and vacated, and final judgment in its favor will be entered here. In all other respects, the judgment will remain in full force and effect.

*Reversed, in part, and final judgment.*