**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THE CORNER ASSOCIATES,
Plaintiff-Appellant,

v.                                                    No. 98-1153

W. R. GRACE & COMPANY - CONN.,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-97-1848-A)

Argued: October 27, 1998

Decided: February 19, 1999

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
MOON, United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Cameron Cohick, DAVID, HAGNER, KUNEY &
DAVISON, P.C., Washington, D.C., for Appellant. Michael David
Moore, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P.,
McLean, Virginia, for Appellee. **ON BRIEF:** Robert M. Kuney,
DAVID, HAGNER, KUNEY & DAVISON, P.C., Washington, D.C.,
for Appellant. Robert R. Vieth, MCGUIRE, WOODS, BATTLE &
BOOTHE, L.L.P., McLean, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The instant case is a landlord-tenant matter over which the federal courts have jurisdiction by reason of diversity. The tenant/assignor claims that the assignment of its rights and duties to the assignee (who later became insolvent) created a surety relationship between itself and the assignee, and the landlord's 1995 agreement with the assignee to permit termination on 120 days notice of a lease agreement originally scheduled to end in the year 2000 was a material alteration that relieved the assignor of its contractual duties under the lease. On the other hand, the landlord claims that Virginia law, which applies here, does not recognize the concept that the assigning tenant becomes a surety. Thus, according to it, the assignor still owes the rent that was not paid by the assignee when it became insolvent. The issue is a novel one under Virginia law.

The facts, as established by the district court, are the following:

There was a lease agreement entered into on July 15, 1983, between The Corner Associates ("Corner"), the landlord, and W.R. Grace & Co. ("Grace"), the tenant, for premises located in the Seven Corners Shopping Center. The parties understood that Herman's World of Sporting Goods, which was an unincorporated division of Grace, would occupy the leased premises.

On March 21, 1985, Grace transferred the business and assets of its Herman's World of Sporting Goods division to Herman's Sporting Goods, Inc. ("Herman's"). That same day, Grace assigned its rights and obligations under the Lease to Herman's.[1] Although Grace

_____

[1] Article 21 of the Lease addresses assignments and specifically provides that:

2

assigned its rights and obligations to Herman's, the Lease provided that Grace would "remain liable" in the event of an assignment.**2**

Herman's financial troubles, which ensued after the assignment, caused it to file for bankruptcy in 1993. Because its financial picture had not brightened, Herman's approached Corner in the summer of 1995 to ask it to locate a new tenant for the leased premises. Corner agreed to that arrangement, on the condition that Herman's permitted it to terminate the Lease on 120 days notice. The parties, without ever notifying Grace and seeking its assent, formalized the agreement by amending the Lease on August 1, 1995.**3**  Corner regards the failure to include Grace in the amendment as an "administrative oversight."

_____

> Tenant shall have the right, without the consent of Landlord, to assign this Lease to a corporation or other business entity acquiring all or substantially all of the assets of Tenant's Herman's World of Sporting Goods division . . . provided that Tenant shall give to Landlord due written notice and provided that such assignee shall assume this Lease in writing and will fully and punctually perform, observe and adhere to all the covenants and conditions contained in this Lease specifically including Article 5 [Use of Premises], and further provided that Tenant shall remain liable under this Lease.

Lease ¶ 21.7.
**2** The two word phrase "remain liable" is all that the lease states on the matter.

**3** The Lease originally provided for a term of fifteen years, terminating on January 31, 2000. The amendment, executed on August 1, 1995, provides:

> Upon execution of this First Amendment to Lease, Landlord, at its sole discretion shall have the right upon one hundred twenty (120) days written notice to Tenant to terminate this Lease, provided, however, such termination shall in no event be effective prior to February 1, 1996. Tenant shall vacate the Premises on the 120th day of such notice, and this Lease shall terminate as if such day were the day originally set forth as the termination date of the Lease.

First Amendment to Lease ¶ 2.

3

Having no hope for a turnaround, Herman's filed a Chapter 11 bankruptcy petition in the District of New Jersey in 1996. During the bankruptcy proceedings, Herman's sought relief from its obligations under the lease. The court granted Herman's request, with Herman's obligations terminating seven days after written notice to Corner. The seven day period expired on July 9, 1996, and on that date Herman's terminated business operations in the leased premises. Grace has chosen not to occupy the premises after Herman's departure.

Corner responded to Herman's cessation of business operations by attempting to recover the unpaid rent, taxes, and costs from Grace.[4] Grace denied liability, maintaining that its assignment of the Lease made it a surety whose duties were discharged when Corner and Herman's materially altered the terms of the Lease without its knowledge or consent. Corner then terminated the Lease on October 15, 1997, and brought this action seeking damages for the alleged breach of lease agreement, including attorneys' fees and costs.

The District Court granted defendant's motion to dismiss/motion for summary judgment. Corner has filed a timely appeal.

DISCUSSION

We review de novo the grant of a motion for summary judgment. See Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). Moreover, where a federal court sits in diversity, it must apply the substantive law of the forum state, which in the instant case is Virginia. See Erie v. Tompkins, 304 U.S. 64, 78 (1938).

I.

The first issue is whether Grace in fact became a surety after its assignment to Herman's. Grace claims, and the district court agreed, that Grace became a surety for Herman's when it assigned the lease to Herman's because Herman's assumed primary responsibility for performing the duties under the lease, such as paying the rent.

---

[4] In all, Corner contended that Grace owed $59,855.16 in minimum rent, common area operating and maintenance costs, and taxes.

4

The question before us is one of first impression in Virginia. However, the concept of an assignor of contractual and property rights and duties assuming the status of a surety after the assignment is not a novel one to Virginia law. In an analogous situation, courts in Virginia have long held that where a party purchases property subject to a mortgage that the seller is under an obligation to pay, the grantee is also liable to the mortgagee and "[a]s between the grantor and grantee, the latter is the principal debtor and the grantor is his surety. . . ." Willard v. Worsham, 76 Va. 392, 393-394 (1882); Hofheimer v. Booker, 180 S.E. 145, 146-47 (Va. 1935) (affirming that rule).

Other jurisdictions view assignments of leases as creating a surety relationship. See, e.g., Walker v. Rednalloh Co., 13 N.E.2d 394, 397 (Mass. 1938); Samuels v. Ottinger, 146 P. 638, 639 (Cal. 1915) ("the assignment . . . make[s] the lessee a surety to the lessor for the assignee, who, as between himself and the lessor, is the principal bound, whilst he is assignee, to pay the rent and perform the covenants."). Those cases did not distinguish between leases and mortgages.

We conclude that Virginia's courts would extend the surety relationship to assignors of leases. The facts in Hofheimer do not differ much in a legal sense. The assignor (Booker) assigned the mortgage to another individual, who later assigned it to a corporation. Id. at 145. The mortgagee (who himself was an assignee) agreed to grant the last assignee an extension of time to pay the mortgage. Id. at 146. The assignee did not pay and the mortgagee sought payment from the assignor, the original debtor. Id. The court held that since the assignees assumed the debt of the assignor, they assumed the status of principal debtor and the assignor became a surety. Id. at 146-47. Moreover, by extending the time of payment without notifying the assignor, the mortgagee materially altered the mortgage without notifying the surety and thereby discharged her. Id. at 148. As those facts -- the creditor and assignee materially modify the original agreement without notifying the assignor -- essentially describe what has happened here, and the court did not draw any distinctions between mortgages and leases, we find no reason for declining to extend the Hofheimer reasoning to lease agreements.

Corner's principal argument is that Grace is absolutely liable and the lease does not expressly or impliedly create a surety relationship

5

between the tenant and an assignee. It argues that Virginia's courts have steadfastly refused to insert provisions into the lease or create relationships therein that are not created by the document itself. See, e.g., Marina Shores v. Cohn-Phillips, Ltd. , 435 S.E.2d 136, 138 (Va. 1993) (stating that "[t]he parties' contract becomes the law of the case unless it is violative of some rule of law or against public policy.").

However, Corner's argument is not persuasive for several reasons. First, Grace agrees with Corner that it was still directly liable to Corner after the assignment. See Cavalier Square v. Alcoholic Bev. Control, 435 S.E.2d 392, 395 (Va. 1993) (stating that an assignment does not discharge a tenant's contractual duties). However, Grace's direct liability to Corner is entirely consistent with surety liability because all sureties are directly liable to the creditor. See First Virginia Bank-Colonial v. Baker, 301 S.E.2d 8, 11 (Va. 1983).

In addition to the cases cited above, some scholars also support Grace's interpretation of the term. See, e.g. , 1 HERBERT THORNDIKE TIFFANY, TIFFANY ON REAL PROPERTY § 121, at 194(3d ed. 1939) ("The liability of the assignee is, as between him and the lessee, regarded as primary, and the lessee is regarded as the surety. . . especially where the original lease provides that in the event of assignment, the lessee shall be and remain liable to pay the rent.") (emphasis added). Moreover, the Restatements also take that view, see RESTATEMENT (SECOND) OF PROPERTY, LANDLORD AND TENANT, § 16.1 cmt. e (Supp. 1996) ("The promisor is secondarily liable as between him and the transferee and is in effect a surety."); RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY,§ 83 (Supp. 1996) (stating that a surety relationship arises by operation of law where a party assigns contractual rights and duties to another), and Virginia's courts have often looked to the Restatement of Property for guidance on landlord and tenant matters. See, e.g., Love v. Schmidt, 389 S.E.2d 707, 709 (Va. 1990) (citing RESTATEMENT (SECOND) OF PROPERTY§ 19.1 (1977), which discusses landlord's nondelegable duties under a lease); Harbour Enters. v. Ferro, 340 S.E.2d 818, 819 (Va. 1986) (citing RESTATEMENT (SECOND) OF PROPERTY § 18.4 (1977),which discusses a landlord's liability to third parties).

The Virginia cases upon which Corner relies are distinguishable because the contract terms are incompatible with the statute. The par-

6

ties in those cases were arguing that the relevant statutory provisions or common law doctrines superseded specific contract provisions that specifically rejected the statutory default rule. For example, in <u>Marina Shores, Ltd. v. Cohn-Phillips, Ltd.</u>, 435 S.E.2d 136 (Va. 1993), the lessor filed an unlawful detainer action against the lessee to remove it from the premises without first giving the lessee notice. <u>Id.</u> at 137. The landlord acted pursuant to a lease provision allowing it to remove the tenant "by any lawful means." <u>Id.</u> at 138. Moreover, the landlord and tenant specifically agreed that no notice need be given. By contrast, the surety relationship is, as shown above, entirely consistent with the contract provision at issue here.

Second, the case law in other jurisdictions upon which Corner relies does not carry the day. While it is true that in <u>Rauch v. The Circle Theatre</u>, 374 N.E.2d 546, 550 (Ind. Ct. App. 1978), the court states that "a true surety relationship . . . is not in fact created by an assignment of a lease," the court also acknowledged in that same sentence that the surety relationship "does provide an apt analogy which is descriptive of the lessee's liability." <u>Id</u>. Later in the paragraph, the court stated that the lessee "is still bound upon the covenants contained in the lease until such time as the lease expires or the lessor grants an express novation or commits acts which give rise to an implied novation, such as . . . <u>a material alteration of the existing lease</u>." <u>Id.</u> (emphasis added). Thus, under <u>Rauch's</u> reasoning, Corner's agreement with Herman's is sufficient to discharge Grace even if Grace were not considered a surety.

In another case upon which Corner relies, <u>Southland Investment Corp. v. McIntosh</u>, 223 S.E.2d 257 (Ga. Ct. App. 1976), the court acknowledged that "courts have used the suretyship idea in holding that where the agreement between the lessor and the transferee modifies the original lease in such a manner so as to increase the original lessee's liability, then the contract relations as to the former parties are severed." <u>Id.</u> at 260. To be sure, the court did reject the lessee's contention that it was a surety whose obligations ended when the landlord consented to the assignment to a "financially irresponsible tenant." <u>Id.</u> at 261. However, the context from which that statement was taken reveals that the tenant's argument was that the landlord's mere consent to the assignment relieved it of liability because the assignee's financial problems created an increased risk that the

7

assignor's liability would be greater. Id. Grace's argument is not that the assignment discharged it but that the material alteration to the lease altered it. Thus, the Southland decision is distinguishable.

Third, Corner's argument regarding Grace's joint and several liability to Corner is misplaced. Corner argues that because Article 21, paragraph 21.3 of the Lease provides for joint and several liability to Corner, Grace cannot be entitled to indemnity from Herman's, as a surety normally would be so entitled from the principal.

However, the creditor always has the option of suing the surety or principal individually in any order or simultaneously. See First-Virginia Bank Colonial v. Baker, 301 S.E.2d at 11. The essence of joint and several liability is that the liable party may be sued at any time either alone for the entire judgment or jointly with a co-liable party. See BLACK'SLAW DICTIONARY 837 (6th ed. 1990) (defining joint and several liability). Moreover, the assignment specifically provided that Herman's will indemnify Grace for liabilities in connection with the premises. Thus, the Lease provision does not preclude a finding that Grace became a surety after the assignment.

Finally, Corner's behavior following the assignment makes clear that it considered Grace a surety. After the assignment to Herman's, Corner accepted rental payments from Herman's, and did not look to Grace for them. Herman's then encountered financial difficulties, and approached Corner, not Grace, about finding a new tenant.

Corner and Herman's then executed an agreement -- an amendment to the lease -- that permitted Corner to terminate the lease at 120 days' notice. Neither Corner nor Herman's insisted that Grace sign the amendment or even sought out Grace to notify it. In fact, one Corner official stated that "it would not have been reasonable to require Corner to obtain [Grace's] consent" to the amendment. Corner's behavior is entirely consistent with a creditor's expectations of a surety. It is clear from Corner's behavior that it regarded Herman's as the primary obligor, and it only sought out Grace when it became clear that Herman's could not pay. Thus, even Corner's own actions support the construction of Grace's promise to "remain liable" under the lease as creating a surety relationship between Grace and Herman's.

8

II.

Grace argues that the district court correctly found that its liability was discharged because of the amendment to the lease. As a surety, it argues, its obligations terminate whenever the principal obligor and the creditor enter into any agreement without the consent or knowledge of the surety that materially alters the terms of the agreement underlying the suretyship. See Board of Sup'rs of Fairfax Cty. v. Southern Cross Coal Corp., 380 S.E.2d 636, 638 (Va. 1989). Moreover, the surety need not prove that the alteration prejudiced it. See Southwood Builders, Inc. v. Peerless Ins. Co., 366 S.E.2d 104, 107-108 (Va. 1988) ("A separate showing of prejudice to the surety is unnecessary because a material deviation, in itself, establishes sufficient prejudice.") (citation omitted). Corner contends that the amendment is not effective, and if it is, then it is not material because Grace benefitted from, and was not prejudiced by the lease. Therefore, the questions are: (1) whether the amendment is effective; and (2) if effective, whether it is a material alteration of the lease.

A.

Corner argues that the amendment is not effective because Grace, as a party to the original lease contract, did not consent. In support of its argument, Corner cites several cases, from Virginia and elsewhere, that state that a contract cannot be modified without the mutual assent of all parties to it. See, e.g. , Stanley's Cafeteria, Inc. v. Abramson, 306 S.E.2d 870, 873 (Va. 1983); Binninger v. Hutchinson, 355 So.2d 863, 865 (Fla. Dist. Ct. App. 1978). Grace was a party to the original lease. Since contract law governs lease agreements, see Clark v. Harry, 29 S.E.2d 231, 233 (Va. 1944), Corner argues that the amendment cannot be effective as to any party without Grace's assent.

However, that argument ignores that Grace assigned all of its "rights, titles and interests" in the lease to Herman's -- including "without limitation, all of its right, title and interest in and to all options of the tenant under the lease to renew the term thereof."**5** An

_____

**5** Grace did not appear to hold any other options under the lease.

9

assignment would be meaningless if Grace then had the power to modify the contract.

Virginia law supports that conclusion. In Taylor v. King Cole Theatres, Inc., 31 S.E.2d 260 (Va. 1944), the lessors assigned their rights as landlords to the assignee and specifically promised not to exercise the right to renew given to them in the lease. Id. at 261. Later, the Appellants (the tenants) attempted to renew the lease with the assignors without contacting the assignee. Id. The Virginia Supreme Court held that the assignment operated to terminate any right the assignors had to renew the lease. Id. at 262. Moreover, to the extent that the assignor gave additional assurance that they would not attempt to exercise any of the rights they held under the lease, there was additional reason to hold that the assignor's actions were ineffective. Id.

Although the Virginia Supreme Court could have decided the case by noting only the additional assurance that the assignor would not attempt to renew the lease, the court took pains to note that the assignor also assigned all of their other rights as well. For example, before holding that the renewal was ineffective, the court noted that

> In this third contract the original lessors covenanted with the appellants that they had good and lawful right, power and authority to execute the lease, when at that very time, they had no such power or authority, for they had previously assigned this identical power and authority, along with all of their other rights in the lease, to King Cole Theatres, Inc.

Id. at 262 (emphasis added).

Later, after also noting that the appellants had paid rent to the assignee for two years and that the renewal provision in the lease was indefinite, the Court stated that "[w]e prefer to decide the case upon the fact that King Cole Theatres, Inc. was the owner of the lessors' interest in the lease, including the right to renew the same, and it alone could execute or agree to a valid renewal." Id. (emphasis added). Thus, the assignor's assent to modifications to the lease is not necessary under Virginia law. Moreover, other jurisdictions have reached the same conclusion. See, e.g., Engel v. Klatt, 231 N.W. 105, 106 (Mich. 1930) (stating that following an assignment, the assignor

10

"would not thereafter have had any interest in the lease or been a party to any new agreement made relative thereto"). Therefore, the amendment is effective.

B.

We need not debate long to conclude that the amendment was a material alteration to the lease. The lease, originally entered into by Grace and Corner on July 15, 1983, was not to have expired until 2000. Under Article 26, Corner could terminate the lease only if: (1) the tenant did not pay the rent when due and the rent remained outstanding for ten days; or (2) the tenant fails to abide by any other covenants or promises in the lease and that failure continues for thirty days. Under the amendment to the lease, entered into by Corner and Herman's on August 1, 1995, Corner may, "at its sole discretion," terminate the lease upon 120 days' notice. Thus, a lease which was to continue for three more years before the amendment, absent a breach by the tenant, became a lease that was terminable for any reason by Corner upon 120 days' notice.[6] The District Court recognized the amendment as material, and Corner's argument as to materiality (based on the notion that the amendment is not prejudicial to Grace) is foreclosed by Virginia law. See Southwood Builders, 366 S.E.2d at 107-08.

CONCLUSION

In conclusion, we affirm the District Court's ruling that Grace became a surety after the assignment. Although it is a question of first impression in Virginia, the weight of the authority appears to support the proposition. Moreover, since the amendment to the lease, an amendment to which Grace did not consent (or even know of), materially altered the lease, Grace's obligation should be discharged.

AFFIRMED
_____
[6] Although Corner's officials have testified that the agreement was entered into at Herman's behest for the purpose of allowing Herman's to exit the lease because of its financial difficulties, that purpose is not expressed anywhere in the amendment.

11