514

# CIRCUIT COURT OF THE CITY OF NORFOLK

Patricia Holmes,
Administrator
of the Estate of
Thomas Holmes,
deceased

v.

Joseph Reid,
Dan Licardo,
Robert Frank Wright,
Downtown Norfolk Entertainment, Inc.,
421 Granby Real Estate Services, L.L.C.,
421 Granby, L.L.C.,
William R. Fellion,
d/b/a All Star Entertainment,
Top Line Promotions, L.L.C.,
d/b/a All Star Entertainment,
All Star Entertainment, L.L.C.,
and Tarran Jones,
d/b/a All Star Entertainment

July 9, 2010

Case No. (Civil) CL07-4523

BY JUDGE NORMAN A. THOMAS

In this case, Ms. Patricia Holmes ("Plaintiff"), the Administrator of the Estate of Thomas Holmes ("Holmes" or "the decedent"), sues numerous defendants for the alleged wrongful death of her decedent and son, Holmes. (4th Am. Compl. 1, ¶¶ 2, 72.) On October 29, 2009, Plaintiff filed her Fourth Amended Complaint, and she supplemented that pleading with a Bill of Particulars, filed on March 5, 2010. Two defendants, 421 Granby, L.L.C. ("Granby") and 421 Granby Real Estate Services, L.L.C. ("GRES"), filed a Plea in Bar in response to Plaintiff's Fourth Amended Complaint and Bill of Particulars. Defendant Robert Frank Wright, sued individually, joins the Plea in Bar in his "representative" capacity, that is, with respect to his membership and ownership interests in both Granby and GRES. Because Wright's interests in these entities are subsumed within Granby's and GRES's legal positions regarding the Plea in Bar, the Court will not take further note of him in its resolution of it. That Plea in Bar is the subject of this Letter Opinion. Having considered the parties' oral and written arguments, pleadings, pleading exhibits, and applicable authorities, this Court, for the reasons stated herein, denies the Plea in Bar.

## Background

This case has its origins in the alleged killing of Holmes by Joseph Reid, who shot him multiple times on or about March 28, 2007, at the Granby Theater, a Norfolk entertainment venue, during an event entitled the "Soul Provider Birthday Bash." (4th Am. Compl. ¶¶ 15, 16, 17, 25.) Holmes survived in an unconscious state for several months after the shooting, and ultimately died on August 6, 2009. (*Id.* at ¶¶ 2, 23, 68, 72.) Plaintiff seeks $50 million in compensatory damages from the defendants (*id.* at ¶ 15), not all of whom have been served or answered.

Although Plaintiff initially sued as the decedent's next friend, following Holmes' death, the case evolved to the current wrongful death action. Plaintiff asserted numerous causes of action in earlier iterations of the present Fourth Amended Complaint; however, previous Court rulings have eliminated all but one, a premises liability claim. This remaining claim seeks damages for the defendants' alleged collective failure to use ordinary care in their duty to protect the decedent as a business invitee of the Granby Theater on March 28, 2007. (*Id.* at ¶¶ 15, 67.) Plaintiff alleges that certain of the defendants, through various security personnel as well as Dan Licardo, head of security at the facility, had knowledge of Reid's spoken threat to kill Holmes, made at the Granby Theater within an hour of the shooting. (*Id.* at ¶¶ 25, 54–56.) That occurrence, Plaintiff alleges,

placed Holmes in imminent danger of serious injury or death. (*Id.* at ¶¶ 54, 67.) *See generally Wright v. Webb*, 234 Va. 527, 530–33, 362 S.E.2d 919, 920–21 (1987).

## The Plea in Bar

The Plea in Bar involves two defendants allegedly linked to the ownership and management of the Granby Theater: Granby, the property owner (Bill of Particulars ¶ 1), and GRES, the property "operator and manager." (*Id.* at ¶ 2.) These two limited liability company ("LLC") defendants, along with Downtown Norfolk Entertainment, Inc. ("DNE"), are alleged to be affiliated with Wright, and, indeed, Wright is alleged to be the "alter ego" of each of them. (*Id.* at ¶ 4.) As to each of these companies, Plaintiff alleges that, although they constitute LLC or corporate entities (4th Am. Compl. ¶¶ 6, 7, 8), Wright was not only the alter ego of them, but also "the only individual who was authorized by law to own, operate, and manage the property" and who "owned, operated, and managed the property both as the agent, servant, and employee of the owner, and individually as the owner, operator, and manager of the property." (Bill of Particulars ¶ 4.) Further, Plaintiff alleges that, on March 28, 2007, and "throughout the entire time of the events in this cause of action," DNE "operated and maintained the premises." (4th Am. Compl. ¶ 6; *see also* Bill of Particulars ¶ 3.) In addition, Plaintiff alleges that Wright and DNE employed Licardo as head of security for the Granby Theater and that Licardo "was so employed and acting within the scope of his employment throughout the entire time of the events in this cause of action." (4th Am. Compl. ¶ 4.)

Thus, although Plaintiff uses somewhat broad terminology and sometimes internally inconsistent or mutually exclusive language throughout the Fourth Amended Complaint and Bill of Particulars to describe these four parties' interrelationships, as to the relevant night, the Court concludes from its holistic review of those pleadings that she casts Granby as property owner-landlord, GRES as property manager-landlord, DNE and Wright as facility occupants-operators, and Wright as a member, owner, and employee of each of these three business entities, and, via a piercing-the-corporate-veil theory, the alter ego and physical embodiment of each of them.

Notwithstanding her assignment of such roles to these defendants, Plaintiff makes the following catch-all allegation as to Granby: "All acts undertaken and/or negligently performed at the Granby Theater were done

by individuals who by law were the agents and/or employees of the owner, engaging in the performance of their duties for and on behalf of the owner." (Bill of Particulars ¶ 1.)

In the Plea in Bar, Granby and GRES seek to establish factually, *inter alia*, that they constitute duly registered limited liability companies, that they have no employees or agents, that they follow lawful and proper corporate formalities, that Wright does not constitute their alter ego, that they do not constitute Wright's alter ego, and that Wright was not personally present at the Granby Theater on March 28, 2007. (Plea in Bar ¶ 7; Mem. of Law in Supp. of Plea in Bar 3, 4, 5 [hereinafter "Mem. of Law"].) They seek dismissal of the lawsuit against them on the basis that: (1) they had no employees and "no individuals were in a master-servant/employer-employee relationship" with them (Plea in Bar ¶ 7; *see infra* pleading analysis); (2) "Vicarious liability may not be imposed on an employer due to the negligent acts of a corporate entity employee under a theory of *respondeat superior*" (*id.* at ¶ 8); (3) "Virginia law does not impose tort liability on a principal for the actions of its agents based upon agency by estoppel, apparent agency, or ostensible agency theories" (*id.* at ¶ 9); and 4.) "As the mere landlord [sic] of the premises, Defendants cannot be held vicariously liable for the acts and/or omissions of its [sic] tenants or its [sic] tenants [sic] agents and employees." (*Id.* at ¶ 10.)

Plaintiff objects to the Court's consideration of the Plea in Bar on various grounds, asserting that it is a "disguised" summary judgment motion, that it is not an appropriate procedure to determine "whether these defendants are the principles [sic] of the remaining defendants and/or the owners of the property subject to a nondelegable [sic] duty of reasonable care," and that "[a] Plea in Bar is used solely for the purpose of establishing a single issue which, as a matter of law, does not state a cause of action." (Pl.'s Objs. to Defs.' Plea in Bar ¶¶ 2, 3, 4.) In any event, at the June 7th hearing, Plaintiff strenuously objected to the Court's determining any factual issue necessary to disposition of the Plea in Bar absent intervention of a jury, as originally demanded in the Fourth Amended Complaint.

Plaintiff's counsel cited the recent case of *Hawthorne v. VanMarter*, 279 Va. 566, 692 S.E.2d 226 (2010), in support of her position that the Court should not hear and determine such factual issues. In that case, the Court discussed the proper procedural function of a plea in bar, as well as the role of the court and jury in determining factual issues necessary to the plea's outcome. *Id.* A consolidated appeal, the causes of action arose when an individual was killed and another injured by a Roanoke County Police

Officer, Senior Officer Timothy VanMarter, who struck the vehicle of the two individuals with his police vehicle. *Id.* at 571, 573, 692 S.E.2d at 230, 231. The injured individual and the administrators of the estate of the killed individual ("the plaintiffs") filed motions for judgment, alleging negligence, against VanMarter. *Id.* In response, VanMarter filed a plea in bar based on the theory that he was pursuing a speeding vehicle and therefore was entitled to the protection of sovereign immunity. *Id.* At the hearing for VanMarter's plea in bar, the circuit court considered counsel's arguments, memoranda, and testimony of VanMarter; the plaintiffs presented no witness testimony. *Id.* at 572, 692 S.E.2d at 230. "Based on VanMarter's testimony, the circuit court found that VanMarter was pursuing a speeding vehicle at the time of the accident. The circuit court held that VanMarter's actions were discretionary in nature and that, therefore, the plaintiffs' claims of ordinary negligence were barred by the doctrine of sovereign immunity." *Id.*

Thereafter, the plaintiffs conducted depositions of two witnesses, who provided testimony that the plaintiffs believed created a factual dispute with VanMarter's plea in bar testimony regarding the existence of a speeding vehicle. *Id.* Claiming that this constituted newly discovered evidence, the plaintiffs moved the circuit court to amend its ruling, allow the two witnesses to testify to the existence of a speeding vehicle, and allow a jury to resolve the issue of whether VanMarter was pursuing a speeding vehicle at the time of the accident. *Id.* "The plaintiffs argued that, if the jury determined that there was no such speeding vehicle, VanMarter would not be entitled to the protection of sovereign immunity and the jury should be instructed on both ordinary and gross negligence." *Id.* The circuit court denied the plaintiffs' motion, stating that the evidence did not qualify as "after-discovered evidence" and that, even if the court had considered the testimony of those witnesses, the outcome of the plea in bar hearing would have been the same. *Id.* at 573, 692 S.E.2d at 231. After a jury trial resulted in a verdict for VanMarter, the plaintiffs appealed to the Supreme Court of Virginia. *Id.* at 574, 692 S.E.2d at 232. One of the plaintiffs[1] attacked the circuit court's decisions regarding the plea in bar, arguing "that the circuit court erred when it refused to submit to the jury the factual question whether VanMarter was engaged in overtaking a speeding vehicle at the time of the collision" and "that the circuit court

---

[1] The Court dismissed the other plaintiffs' appeal on an unrelated issue. *Id.* at 576, 692 S.E.2d at 233.

improperly made a factual determination when the court concluded that the proffered testimony of the two witnesses would not have changed the outcome of the circuit court's sovereign immunity holding." *Id.* at 576, 692 S.E.2d at 233.

The Court noted the underlying function of a plea in bar is "to narrow the litigation by resolving an issue that will determine whether a plaintiff may proceed to trial on a particular cause of action." *Id.* at 578, 692 S.E.2d at 234 (citation omitted). It "asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery. The party asserting a plea in bar bears the burden of proof on the issue presented." *Id.* at 577, 692 S.E.2d at 233 (citations omitted). With respect to factual issues relevant to a plea in bar, the Court stated:

> The issue raised by a plea in bar may be submitted to the circuit court for decision based on a discrete body of facts identified by the parties through their pleadings, or developed through the presentation of evidence supporting or opposing the plea. If the parties present evidence on the plea *ore tenus*, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support.
>
> If the facts underlying the plea in bar are contested, a party may demand that a jury decide the factual issues raised by the plea.

*Id.* at 577–78, 692 S.E.2d at 233–34 (citations omitted). The Court found that the parties had "proceeded on the plea in bar as if the facts were uncontested" and that the plaintiff failed to "inform[] the circuit court of the" two witnesses, did not "request that a jury decide the factual issues presented by the plea in bar, agreed that the circuit court should decide the issues, and did not object when the circuit court made the factual determination that VanMarter was in fact attempting to overtake a speeding vehicle." *Id.* at 578, 692 S.E.2d at 234.

This Court finds instructional *Hawthorne*'s elucidation of a plea in bar's rightful place in Virginia civil procedure, and especially the discussion respecting the resolution of factual issues. Moreover, this Court recognizes the Supreme Court of Virginia's emphasis in recent years on the constitutional right civil litigants possess to a jury determination of factual issues. *See, e.g., Fultz v. Delhaize Am., Inc.,* 278 Va. 84, 88, 677 S.E.2d 272, 274 (2009); *Bethel Inv. Co. v. City of Hampton,* 272 Va. 765,

769, 636 S.E.2d 466, 469 (2006). Here, Plaintiff affirmatively asserts her right to a jury trial on disputed facts necessary to adjudicate the Plea in Bar. Thus, the Court may not proceed to determine such facts, and it must deny the Plea in Bar.

Having resolved the Plea in Bar, the Court nevertheless deems it appropriate to comment upon a number of the factual and legal issues raised by the parties respecting that plea and their significance at the upcoming trial.

*Premises Liability in Virginia as Applicable to This Case*

As noted, Plaintiff asserts a tort cause of action grounded in premises liability. That cause of action relates directly to when, and under what circumstances, the owner or other occupier of a premises owes a legal duty, and the standard of care then applicable, to a business invitee vis-à-vis a third-party criminal assault. *See Wright, supra,* 234 Va. at 530–33, 362 S.E.2d at 520–21. In *Burns v. Johnson,* 250 Va. 41, 458 S.E.2d 448 (1995), a case involving the claims of a sexually assaulted patron against a gasoline station owner, the Court reviewed the *Wright* case, in addition to other premises liability case law, and stated as follows:

> Virginia adheres to the rule "that the owner or occupier of land ordinarily is under no duty to protect an invitee from a third person's criminal act committed while the invitee is upon the premises."
>
> In *Wright,* we fashioned a narrow, limited exception to the general rule. There, we held that an owner or occupier of land, "whose method of business does not attract or provide a climate for assaultive crimes, does not have a duty to take measures to protect an invitee against criminal assault unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee." This exception requires "notice of a specific danger just prior to the assault."

*Id.* at 44–45, 458 S.E.2d at 450 (citations omitted); *see also, discussion, Yuzefovsky v. St. John's Wood Apts.,* 261 Va. 97, 107, 540 S.E.2d 134, 139–40 (2001). In addition, the *Burns* Court noted that "[t]he question whether a duty of care exists in a negligence action is a pure question of

law." *Burns*, 250 Va. at 45, 458 S.E.2d at 451; *see also Yuzefovsky*, 261 Va. at 106, 540 S.E.2d at 139.

In its previous rulings, this Court eliminated from the case any cause of action based on an assertion that the defendants' method of business attracted or provided a climate for assaultive crimes. Thus, at trial, the plaintiff's case will turn on her evidence regarding whether one or more of the defendants standing in relation to Holmes as business invitor had notice of Reid's alleged threat to kill Holmes. The Plea in Bar, in essence, maintains that Granby and GRES did not, as a matter of law, stand in that position as to Holmes on March 28, 2007, and thus owed him no legal duty of protection from Reid. However, as noted, Granby's and GRES's relationship with and duties to Holmes ultimately depend on facts to be presented at trial.

### *Plaintiff's Allegations Cast Granby and GRES in the Position of Landlords to and Employers of Wright and DNE*

As discussed above, in her pleadings, and notwithstanding her assertions that Wright works for and constitutes their alter ego (as discussed more fully below), Plaintiff portrays Granby as the property owner and GRES as the property manager respecting the Granby Theater premises. Thus, whether considered together or individually, Plaintiff alleges that these LLC defendants represent the landlords of Wright and DNE, the Granby Theater's alleged occupiers and operators on March 28, 2007. As putative landlords of Wright and DNE, whether that relationship was created by a written lease or non-written tenancy, neither Granby nor GRES would bear legal liability for Wright's or DNE's negligent or willful acts as premises occupiers or operators. *Harbour Enterprises v. Ferro*, 231 Va. 71, 73–74, 340 S.E.2d 818, 819 (1986).

In *Harbour Enterprises*, the Court considered the issue, "whether a landlord is vicariously liable to his tenant's business invitee for personal injuries resulting from an assault by the tenant's employee, where the landlord permitted a liquor license in its name to remain posted on the deemed premises." *Id.* at 72, 340 S.E.2d at 818. In that case, a bouncer, the employee of the property owner's tenant, attacked and beat a victim without provocation. *Id.* The victim sued the property owner, among other defendants, and the trial court found that the property owner shared in the liability for the victim's injuries. *Id.* at 73, 340 S.E.2d at 819. The basis of the trial court's decision was:

[T]hat the evidence showed the owner, knowing the lessee had no ABC license in its own name, permitted the lessee to operate under the owner's license when the owner knew that such a license could not lawfully be transferred from one licensee to another. Thus … the operation of the business by [the lessee] "legally" was under the control of the ABC licensee, [the owner], and the licensee was vicariously liable for the acts of the tenant's employee.

*Id.* In deciding against landlord liability, even in light of the owner's apparent willingness to allow the tenant to display the owner's ABC permit and sell alcoholic beverages pursuant to the owner's licensure, the Court noted the following:

Generally, a landlord is not liable to third persons for the negligent or willful acts of the tenant or the tenant's employees. This is because the owner of leased premises ordinarily has surrendered control over the premises to the lessee, the property is in the possession of the lessee, and the landlord, merely because of his ownership, does not have any direct contact with those who are upon the demised premises at the invitation of the tenant.

Moreover, the relationship between landlord and tenant is not the same as that existing between principal and agent. … The maxim respondeat superior has no application to the landlord-tenant relation.

*Id.* at 73–74, 340 S.E.2d at 819 (citations omitted).

Plaintiff seeks to avoid the *Harbour Enterprises* holding and impute tort liability to Granby and GRES by her assertions that these defendants employed, or somehow served as principal of, Wright and DNE, and, in addition, that Wright is the alter ego of both Granby and GRES.[2] The Court briefly will discuss each of these assertions.

---

[2] In earlier proceedings, Mr. Breit, on behalf of Plaintiff, explained to the Court that Plaintiff's piercing the corporate veil theory consists of two prongs. First, it represents an effort to expose Wright to personal tort liability for the alleged conduct of Granby, GRES, and DNE. Second, it relates to Plaintiff's ability to later collect against Wright any judgment she receives in this case against Granby, GRES, or DNE. The Court's

First, as to the allegations that Wright or any LLC or corporate defendant served as Granby's or GRES's agent or employee with respect to the Soul Provider Birthday Bash event, Plaintiff will bear the burden of proof at trial to establish such facts. These defendants vehemently deny that she can do so. Plaintiff asserts that she possesses such proof. The evidence will resolve such matters.

Turning to the "alter ego" allegations, such assertion does not necessarily constitute a legal basis of premises liability against Granby and GRES. If, as Plaintiff contends through her piercing the corporate veil theory, Wright embodies the alter ego of Granby, GRES, and DNE, such that he has ignored such legal formalities and committed such other acts and omissions that he may be held personally liable for the companies' torts, then Wright may be individually liable for DNE's alleged negligence in failing to protect Holmes. However, Granby and GRES would appear to stand *outside* of that "chain" of imputed tort liability.

Indeed, if Licardo, the head of security and employed by Wright and DNE, individually or through his subordinate security staff, failed in a duty to protect Holmes at the Soul Provider Birthday Bash, then Wright and DNE would represent the proper person and corporate entity to incur liability under the application of *respondeat superior*. (*See* 4th Am. Compl. ¶¶ 4, 6–8; Bill of Particulars ¶¶ 1–4.) If Plaintiff's proof at trial merely establishes Granby and GRES as owners, property managers, and landlords, then, even if Wright otherwise represents their alter egos, Granby and GRES simply would not be implicated in any security-related lapse on March 28, 2007, that may result in tort liability. It is completely inapposite that Wright may be the alter ego of Granby and GRES *if* they are not relationally germane to the proximate causation of Holmes' death. (*See, especially,* Bill of Particulars ¶¶ 1–4.)

### Plaintiff's Allegation of a Non-Delegable Duty Owed by Granby and GRES to Holmes

In paragraph four of her Bill of Particulars, in addition to stating her alter ego assertions, Plaintiff alleges that "Robert Frank Wright had a common law and statutory duty to own, operate, and manage the property." In other paragraphs of the Bill of Particulars, Plaintiff alleges a

---

discussion herein does not relate in any way to this purported legal position with respect to post-trial collection against Wright of a judgment in this case.

"non-delegable duty at common law" and, more generally, "the non-delegable duty of the owners." (*See* Bill of Particulars ¶¶ 1, 2.) In general, a landlord is not liable for a tenant's failure to use ordinary care to keep a premises safe for the tenant's business invitees. *Harbour Enterprises, supra*, 231 Va. at 73–74, 340 S.E.2d at 819. However, there are exceptions to this general rule, noted in cases such as *Love v. Schmidt*, 239 Va. 357, 389 S.E.2d 707 (1990); *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 309, n. 5, 618 S.E.2d 331, 334, n. 5 (2005); *Bowers v. Martinsville*, 156 Va. 497, 515, 159 S.E. 196, 202 (1931); and *Richmond & Manchester Ry. v. Moore's Adm'r*, 94 Va. 493, 27 S.E. 70 (1897). Plaintiff's allegations thus appear to be an attempt to potentially hold Granby and GRES liable by means of an exception to the general rule against landlord liability for a tenant's negligence.

In *Love*, the Court discussed the issue, "whether a landlord is liable for an independent contractor's negligence in failing to perform the landlord's common-law duty to maintain the common areas of an office building in a reasonably safe condition." 239 Va. at 358, 389 S.E.2d at 708. The Court observed that "Winfree H. Slater, Inc. (Slater) contracted to manage Edward F. Schmidt, Jr.'s ['Schmidt's'] office building. . . ." *Id.* These parties construed the terms of performing the contract "to impose a duty on Slater to maintain the premises in a reasonably safe condition." *Id.* at 358–59, 389 S.E.2d at 708. At some point after the contract was executed, the office manager of one of the corporate tenants of the office building notified Slater that the middle toilet seat in a women's bathroom in the office building was loose. *Id.* at 359, 389 S.E.2d at 708. Slater neglected to fix the problematic toilet, and an employee of the corporate tenant (Love) injured herself when she used it. *Id.* Love sued Schmidt for her injuries, a jury returned a verdict of $150,000.00 in favor of Love, and the trial court set aside that verdict, finding that Love had been "guilty of contributory negligence as a matter of law." *Id.* at 359, 389 S.E.2d at 708. The Court granted both Love and Schmidt appeals. *Id.*

The Court proceeded to discuss its previous decisions, and it noted the existence of a non-delegable duty at common law, requiring a landlord to maintain the common areas of a leased premises in a reasonably safe condition. *Id.* at 360, 389 S.E.2d at 709. Nevertheless, the Court noted that, even in the face of such a duty, as to any particular defect, the landlord must have notice thereof before tort liability may be imposed upon it. *Id.* at 360–61, 389 S.E.2d at 709–10.

However, the line of cases represented by the *Love* decision does not necessarily avail to Plaintiff with respect to Granby and GRES. In

*Wright,* the Court noted that no duty whatsoever arises to protect a business invitee unless or until his invitor, with whom he enjoys a special relationship, has actual notice of a specific threat of third-party criminal assault so as to indicate an imminent probability of harm to that invitee. *Wright, supra,* 234 Va. at 532–33, 362 S.E.2d at 921–22; *see also Burns, supra,* 250 Va. at 44–45, 458 S.E.2d at 450.

Upon these pleadings, Plaintiff clearly asserts that Wright and DNE represented Holmes' business invitors and that Licardo, the security head, and, by implication, the subordinate security staff, worked for them. Plaintiff contends that Licardo's staff overheard Reid's death threat to Holmes, reported it directly to Licardo, and that they collectively failed to use reasonable care to protect Holmes. (*See* 4th Am. Compl. ¶¶ 50–56, 61–66.) Thus, once again, and despite any allegation that Wright represented their alter ego, Granby and GRES, as property owner and property manager, respectively, and landlords, would not appear within the *respondeat superior* imputed liability path, *unless* Plaintiff's proof also demonstrates them to be principals or employers of Wright and/or DNE with respect to presentation of the Soul Provider Birthday Bash. Absent such proof, Plaintiff's assertion that Granby and GRES bore a common law non-delegable duty to protect Holmes from Reid's threatened assault completely contravenes *Wright*'s holdings, and it would place upon premises owners and landlords a comprehensive duty of care respecting their tenants' business invitees unheard of in Virginia jurisprudence. This Court cannot impose such a duty. *Love* and other similar cases simply do not address issues relating to the duty of a business invitor to an invitee vis-à-vis a third-party criminal assault. Instead, they deal with distinct liability issues relating to a landlord's general common law duty to maintain its premises in a reasonably safe physical condition and a prohibition on efforts to delegate that duty to independent contractors.

Finally, in previous proceedings and arguably at paragraph four of the Bill of Particulars, Plaintiff intimates the imposition of a non-delegable statutory duty upon one or more defendants, based upon Norfolk, Va., Code of Ordinances, Ordinance No. 42,486 (Dec. 12, 2006) [hereinafter "Ordinance"], by which legislation the Norfolk City Council granted a special exception to "Robert F. Wright," authorizing the operation of an entertainment establishment on the property located at 421 to 423 Granby Street in Norfolk. That special exception, among many other requirements, imposed the following obligations:

> The business shall provide in-house security or retain the services of a licensed security firm to provide security services at a rate of one security guard per 75 guest occupants on the property whenever occupancy shall exceed 200 persons or 75% of the maximum allowed occupancy, whichever is less. ... After 8:00 p.m. each Friday and Saturday as well as during special events, a security supervisor certified in accordance with the requirements of the Virginia Department of Criminal Justice Services shall be present.

Ordinance § 2(e). Plaintiff, in pointing out that the special exception is personal to Wright, has contended in this lawsuit that he violated the ordinance by utilizing a corporate intermediary (ostensibly, DNE) to provide adult entertainment, that the security personnel on hand on March 28, 2007, did not comply with the above-quoted language, and that, on that evening, the building occupancy exceeded permitted limits. *See* Ordinance §§ 2(b), (e), 3. At best, any non-delegable statutory duty arising from this ordinance would bind Wright, and him alone. Moreover, this Court does not herein conclude that any such duty arises at all as to Holmes. *See, e.g., Harbour Enterprises, supra,* 231 Va. at 74–75, 340 S.E.2d at 820.

### IV. Conclusion

The Court will deny the Plea in Bar of defendants Granby and GRES. It will enter an interlocutory order of today's date to effect this decision.