**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-1671**

---

SPACE TECHNOLOGY DEVELOPMENT CORPORATION;
EARTH SEARCH SCIENCES, INCORPORATED;
ACCUPROBE, INCORPORATED,

                      Plaintiffs - Appellants,

       versus

THE BOEING COMPANY,

                      Defendant - Appellee.

---

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. Leonie M. Brinkema, District
Judge. (CA-05-411-1)

---

Argued: September 19, 2006      Decided: December 12, 2006

---

Before MICHAEL and GREGORY, Circuit Judges, and Thomas E. JOHNSTON,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

---

Affirmed by unpublished opinion. Judge Johnston wrote the opinion,
in which Judge Michael and Judge Gregory joined.

---

**ARGUED:** Jan Ingham Berlage, BALLARD, SPAHR, ANDREWS & INGERSOLL,
L.L.P., Baltimore, Maryland, for Appellants. Amy Berman Jackson,
TROUT CACHERIS, P.L.L.C., Washington, D.C., for Appellee. **ON
BRIEF:** Constantinos George Panagopoulos, BALLARD, SPAHR, ANDREWS &
INGERSOLL, L.L.P., Washington, D.C., for Appellants. John Thorpe
Richards, Jr., TROUT CACHERIS, P.L.L.C., Washington, D.C., for
Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

JOHNSTON, District Judge:

Appellants, Space Technology Development Corporation ("STDC"), Earth Search Sciences, Inc. ("ESSI"), and Accuprobe, Inc. ("Accuprobe"), appeal the district court's dismissal of their breach of contract claim and breach of covenant of good faith and fair dealing claim against Defendant Appellee The Boeing Company ("Boeing"). For the reasons discussed below, the district court's ruling is affirmed.

I.

STDC and ESSI began to negotiate a joint venture with Boeing for the completion, launch, and deployment of a Naval EarthMap Observer Satellite ("NEMO") in October 1999. NEMO contained an onboard hyperspectral imaging system that would produce imagery data for sale to third parties ("Project"). Following the negotiations, Boeing conducted due diligence on the Project at the U.S. Naval Research Laboratories where NEMO was being constructed.

On April 3, 2000, STDC, ESSI, and Boeing executed a document that contained two sections, one entitled "Nonbinding Provisions" and the other entitled "Binding Provisions" ("Letter of Intent"). The Binding Provisions of the Letter of Intent provided, among other things, that Boeing would "lend $1 million to STDC at the execution of this Letter and the loan agreement", "negotiate in good faith to arrive at a mutually acceptable LLC Agreement and

3

other key contracts contemplated in this Letter", "[o]n request of ESSI . . . provide reasonable assistance in the negotiation of the Navy Contract and other contracts with respect to the Project", and work with ESSI and STDC to "use all reasonable efforts to assist the LLC in raising the additional equity and debt capital from third parties required to complete the capitalization of the LLC."[1] (J.A. 18.)

The Binding Provisions of the Letter of Intent also contained three termination provisions. These three provisions governed the means by which the parties could potentially terminate their binding obligations under the Letter of Intent. First, Paragraph J(I) of the Binding Provisions stated that the parties could terminate by mutual written consent. Second, under Paragraph J(ii), either party could terminate "at any time prior to May 1, 2000, if the results of its due diligence investigation [were] not reasonably satisfactory to it." (J.A. 19.) Finally, either party could terminate pursuant to Paragraph J(iii) by giving written notice "to the other party if the Closing [had] not occurred on or before August 1, 2000, provided, however, that the termination of the Binding Provisions shall not affect the liability of a party

---

[1]Several clauses of the Nonbinding Provisions discussed how the parties agreed that "ESSI will cause STDC to form a limited liability company ("LLC")" for purposes of furthering the joint venture. (J.A. 14.) Appellants' complaint does not allege that the LLC was ever formed.

for breach of any of the Binding Provisions prior to the termination." Id.

On April 19, 2000, Boeing informed STDC that it intended to abandon the Project, and two days later, sent STDC and ESSI a letter that confirmed Boeing's intent to terminate ("April 21 Letter"). The April 21 Letter stated, in pertinent part, "Boeing has decided that it has no further wish to become an investor in NEMO or any joint venture related to that project." (J.A. 21.) It further provided that:

> The reason for this decision has nothing to do with our opinion of the viability of the project. Boeing has a limited capacity to absorb new business projects like this one. This project is sufficiently removed from our core business that it would take a significant amount of time to evaluate the business case for NEMO. Our management has concluded that we are too occupied with other such activities to be able to pursue this one, especially in view of the Navy's requirement for a fast decision.

Id.

Approximately five years later, Appellants filed suit against Boeing. Subsequently, Boeing filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court

5

granted Boeing's motion to dismiss on both claims,[2] and Appellants filed this appeal.

## II.

This Court reviews the dismissal of an action under Rule 12(b)(6) de novo.  Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002).  "A Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  Migdal v. Rowe Price-Fleming Int'l Inc., 248 F.3d 321, 325 (4th Cir. 2001).  This Court must also accept as true the facts set forth in the exhibits attached to the complaint. See Fed. R. Civ. P. 10(c); Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) (examining a lease attached to complaint). However, the Court need not accept as true conclusions or inferences from the complaint that are contradicted by the attached exhibits.  See Fayetteville Investors v. Commercial Builders, Inc.,

[2]Neither party discussed Count Two of the complaint, Breach of the Covenant of Good Faith and Fair Dealing, in their brief. Below, Boeing argued that when parties enter into an agreement, "an implied covenant of good faith and fair dealing is inapplicable to those rights."  Riggs Nat'l Bank v. Linch, 36 F.3d 370, 373 (4th Cir. 1994); Ward's Equip., Inc. v. New Holland N. Am., Inc., (Va. 1997).  Appellants responded that Count Two was "duplicative of the breach of contract claim."  (J.A. 89.)  Accordingly, the district court's judgment is affirmed with respect to Count Two of the complaint, and the Court will only address Count One, Breach of Contract.

936 F.2d 1462, 1465 (4th Cir. 1991) ("In the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) . . . the exhibit prevails."). As an important note, we would like to emphasize the rule that in a 12(b)(6) motion, this Court will only consider that which is contained in the complaint, attached as an exhibit pursuant to Rule 10(c), a matter of public record, or a fact that has been judicially noted,[3] and will not consider anything else.[4]

Because this is a contract claim based on diversity jurisdiction, Virginia law applies. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Under Virginia law, "when the terms of a contract are clear and unambiguous, a court is required to construe the terms according to their plain meaning." Golding v. Floyd, 539 S.E.2d 735, 736 (Va. 2001). In doing so, a document's label is not dispositive, rather it is the parties' intent to be bound that is the salient issue. Tilley v. Jessee, 789 F.2d 1074, 1075 (4th Cir. 1986) (true intent of the parties, rather than labels attached to the agreement control the characterization of the obligation); Donnelly v. Donatelli & Klien, Inc., 519 S.E.2d 133, 138 (Va. 1999)

---

[3]See Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (citing Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986)).

[4]The parties reference a Declaration of Dr. John Peel III In Opposition of Defendant's Motion to Dismiss and a copy of an unsigned loan agreement, both of which were attached to Appellants' Memorandum In Opposition To Motion To Dismiss. Because these exhibits were not attached to the complaint, this Court will not consider them. (J.A. 60-70.)

7

(labels are not controlling). If an agreement, as presented in the complaint, reflects an unambiguous intent to be bound, then a party will be bound to its obligations. See Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, 235 F. Supp. 2d 485, 490 (E.D. Va. 2002). Additionally,"a condition precedent exists where 'the contract is made in form, but does not become operative as a contract until some future specified act is performed . . . .'" Hammond v. Pac. Mut. Life Ins. Co., 159 F. Supp. 2d 249, 254 (E.D. Va. 2001) (citation omitted). If the condition precedent does not occur, then the defendant cannot be held liable for failure to perform the contract. See, e.g., Forrest Creek Assocs. Ltd. v. McLean Sav. & Loan Ass'n, 831 F.2d 1238, 1241 (4th Cir. 1987).

III.

In this case, the parties clearly intended to be bound by the paragraphs contained in the Binding Provisions. This is evident by the language in the paragraph preceding the Binding Provisions, which states "[u]pon execution by ESSI and Boeing of this Letter . . . the following lettered paragraphs . . . will constitute the legally binding and enforceable agreement of ESSI/STDC and Boeing." (J.A. 17.) See Tilley, 789 F.2d at 1075; Donnelly, 519 S.E.2d at 138. Reading the complaint and Letter of Intent in the light most favorable to Appellants, the Court must first decide Boeing's

8

obligations under the Binding Provisions and when those obligations required performance. Then the Court must determine whether Boeing was legally permitted to terminate its obligations prior to performance.

Appellants argue that Boeing breached the Letter of Intent by its (1) failure to loan interim financing in the amount of $1 million; (2) failure to negotiate in good faith to arrive at a mutually acceptable LLC Agreement; (3) failure to use all reasonable efforts to assist the LLC in raising the additional equity and debt capital; and (4) failure to provide reasonable assistance in the negotiation of the Navy Contract and other contracts with respect to the Project.

Appellants have failed to state a claim for breach of contract under any of these provisions. With regard to the $1 million interim financing, the complaint neither alleges that there was ever a valid loan agreement, nor was a valid loan agreement attached to it as an exhibit. Looking at the plain meaning of the Letter of Intent, the obligation to loan the $1 million would be triggered "at the execution of this Letter and the loan agreement." (J.A. 18.) Based on that language, the two documents needed to be executed before Boeing could be liable for breach of contract. <u>Forrest Creek Assocs. Ltd.</u>, 831 F.2d at 1241. Furthermore, Appellants needed to allege such facts in their complaint, and they did not. Accordingly, because there was no loan agreement prior to

9

April 21, 2000, there was no obligation on Boeing's part to provide the interim financing of $1 million.

Next, Boeing's obligation to negotiate in good faith and arrive at an acceptable LLC Agreement is an "agreement to agree" that is unenforceable under Virginia law. See Beazer Homes Corp., 235 F. Supp. 2d at 488, 490 (holding that a clause that required the parties to "negotiate in good faith" was an agreement to negotiate at some point in the future and unenforceable under Virginia law). Therefore, there can be no breach of contract claim under this paragraph.

Additionally, the plain text of the Letter of Intent required that there be an LLC in existence in order to trigger Boeing's obligation to use reasonable efforts to assist the LLC in raising additional equity and debt capital. Golding, 539 S.E.2d at 736. The complaint does not allege that there was an LLC in existence prior to Boeing's termination. Therefore, as of April 21, 2000, Boeing was under no obligation to follow through on its obligation to use reasonable efforts to assist the LLC.

Finally, Appellants argue that Boeing was obligated to provide reasonable assistance in the negotiation of the Navy Contract and other contracts with respect to the Project. Under the plain text of the Letter of Intent, Boeing's obligation was to be triggered by the "request of ESSI." (J.A. 18.) The complaint does not allege that ESSI requested reasonable assistance, rather it only alleges

10

that "[a]fter sending the April 21 Letter, [Boeing] failed to comply with any of its obligations under the [Letter of Intent] . . . ." (J.A. 8.) As discussed below, following the April 21 Letter, Boeing was under no obligation to perform. Furthermore, Boeing was obligated to negotiate these contracts on behalf of the LLC. Because the LLC was not formed, Boeing could not have breached its obligation to provide reasonable assistance.

Thus, there were several acts that needed to take place from April 3 to April 21 before Boeing would have been obligated to perform within that time period. Because none of those acts took place, Boeing did not breach the Letter of Intent before April 21.

Having found that prior to the April 21 Letter, Boeing had not breached its obligations to Appellants, this Court agrees with the district court when it ruled that the April 21 Letter terminated Boeing's future obligations. The April 21 Letter represented Boeing exercising its ability to terminate, but remain liable for damages, at any time prior to August 1, 2000 if the Closing had not yet taken place. Boeing exercised that right to terminate, and as discussed above, Appellants cannot show any breach that would render Boeing liable for damages under the Letter of Intent.

IV.

Accordingly, the district court's ruling to dismiss Appellants' complaint for failure to state a claim upon which relief can be granted is affirmed.

<u>AFFIRMED</u>