**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| BETA DATA SERVICES, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No.: N13C-12-268 EMD |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| VERIZON FEDERAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Submitted:  May 19, 2014

Decided:  August 26, 2014

Upon Defendant Verizon Federal, Inc.'s Motion to Dismiss

***DENIED***

Lawrence Harbin, Esquire, Harbin & Hein PLLC, Washington, District of Columbia and Xiaojuan Carrie Huang, Esquire, Wilmington, Delaware *Attorneys for Plaintiff*.

Sean F. Murphy, Esquire, and Christopher L. Harlow, Esquire, McGuireWoods LLP, McLean, Virginia and Gregory P. Williams, Esquire, and Chad M. Shandler, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware *Attorneys for Defendant.*

**DAVIS, J.**

## INTRODUCTION

This is a breach-of-contract action brought by Plaintiff Beta Data Services, Inc. ("Beta Data") against Defendant Verizon Federal, Inc. ("Verizon"). Beta Data seeks unpaid amounts charged to Verizon under a purported retroactive increase in billing rates for subcontractor services. Beta Data alleges that Verizon was incorrectly billed at a lower, five-year contract rate as opposed to Beta Data's higher, month-to-month rate. Beta Data contends that it charged the lower rate because the parties intended to enter into a five-year written agreement that was never formally executed by the parties.

In the Complaint, Beta Data seeks $4,815,941.86 in damages. Beta Data contends that this amount represents the difference between Beta Data's higher, month-to-month rate and the amounts originally invoiced, which Beta Data alleges were improperly billed to Verizon under the lower, five-year rate. Verizon has now moved to dismiss Beta Data's claim, arguing that Beta Data's claims are (i) based on an unenforceable agreement-to-agree, (ii) barred by the statute of limitations and (iii) contrary to the parties' prior course of dealing. For the reasons set forth in this opinion, Defendant Verizon Federal, Inc.'s Motion to Dismiss (the "Motion") is **DENIED**.

## FACTUAL BACKGROUND

Between May 2005 and April 2010, Beta Data provided subcontractor services to Verizon through an executed written agreement. The term of the written agreement was for one year with annual renewal terms available under four one year options. Verizon exercised all four options. As pled in the Complaint, Beta Data provided Verizon with various pricing terms for continued subcontractor services in April 2010. According to Beta Data, Beta Data provided Verizon with both month-to-month and five-year billing rates. Beta Data alleges that Verizon opted for the five-year term in order to reduce costs. Beta Data further alleges that it extended the five-year pricing with the understanding that a written agreement would soon follow. The parties never entered into that written agreement.

On May 4, 2011, the parties held a teleconference. At that teleconference, Verizon announced that Beta Data's services were to be provided on a month-to-month basis. Beta Data alleges that Beta Data then explained that, in that case, Verizon had been improperly billed at the five-year rate as opposed to the higher, month-to-month rate. Beta Data contends that Verizon

2

then promised again to submit a written subcontractor agreement. After the teleconference, Beta Data continued to bill Verizon at the lower five-year rate.

In the beginning of January 2013, Beta Data alleges that Verizon canceled some of its subcontractor services, announced that the remaining services were subject to "at will" cancellation and informed Beta Data that it would not execute a new written agreement. On January 29, 2013, Beta Data's counsel, Lawrence Harbin, sent a letter to Verizon indicating that Beta Data would be adjusting its subcontractor pricing structure to reflect month-to-month pricing for services previously rendered. Thereafter, beginning in February 2013, Beta Data included a notation on its invoices that its rates were subject to change after resolving the billing rates.

Mr. Harbin sent a second letter to Verizon on March 7, 2013. On June 4, 2013, Mr. Harbin telephoned Verizon's Vice President and Deputy General Counsel, Jonathan Spear. According to Verizon, Mr. Spear indicated that he would investigate the matter before providing any response. On June 27, 2013, Mr. Spear telephoned Mr. Harbin and stated that he still lacked adequate information for a response but would contact Beta Data within a week. The next day, Mr. Spear e-mailed Mr. Harbin. In that e-mail, Mr. Spear requested a copy of the contract in question with references to the clauses on which Beta Data was relying for the price-adjustment. Mr. Harbin replied that Beta Data hoped to locate the agreement executed in 2005 within the next couple of days and provide it to Mr. Spear. Mr. Harbin also indicated to Mr. Spear that Beta Data took the position that the 2005 agreement had expired.

On July 31, 2013, Mr. Harbin e-mailed Mr. Spear with an attached letter that laid out Beta Data's position on the facts regarding the cost of Beta Data's services. On August 2, 2013, Verizon's Assistant General Counsel, Marion Spina, acknowledged Verizon's receipt of Mr.

3

Harbin's letter and indicated that Verizon would contact Beta Data in the next week with a response. Mr. Spina responded to the letter on August 16, 2013. Mr. Spina indicated that there was no disagreement that the prior contract expired in 2010. Further, Mr. Spina stated that Verizon saw no basis on which Beta Data was entitled to adjust the rates retroactively. Mr. Spina also indicated that Verizon would be willing to consider a proposal for prospectively revising the current billing rates.

Mr. Harbin replied on September 19, 2013, stating that it was Beta Data's position that the negotiations subsequent to the expiration of the 2005 contract yielded a consummated five-year agreement governing the parties' relationship. Mr. Harbin also discussed potentially adjusting the retroactive billing to apply either: (i) after May 4, 2011, when Verizon stated that the contract was to be month-to-month; (ii) after January 10, 2013, when Verizon notified Beta Data of cancellation of part of its contract; or (iii) some other point in time between those two dates.

On December 3, 2013, Verizon cancelled all remaining Beta Data services. On December 12, 2013, Beta Data submitted invoices for a total of $4,815,941.86, representing the difference between the month-to-month rate and the five-year rate for Beta Data's subcontractor services from May 2010 to November 2013.

Beta Data filed the Complaint on December 30, 2013. Verizon filed the Motion with the Court on March 10, 2014. Beta Data filed Plaintiff's Response to Defendant Verizon's Motion to Dismiss (the "Response") on May 7, 2014. The Court heard oral arguments on the Motion on May 19, 2014 and took the Motion under advisement.

**PARTIES' CONTENTIONS**

**A. VERIZON**

In the Motion, Verizon raises three arguments for dismissal. First, Verizon argues that Beta Data's claims do not set forth a valid enforceable contract. Verizon contends that Beta Data is instead attempting to recover based on an agreement between the parties to negotiate a contract in the future. Therefore, Verizon maintains that it is entitled to dismissal as Beta Data's claims are based on an unenforceable, agreement-to-agree.

Second, Verizon argues that Beta Data's claims are barred by the statute of limitations. Verizon argues that the three-year statute of limitations on Beta Data's claims began to run after the first alleged "partial payment" in May 2010. Verizon contends that under a theory of continuing breach, the statute of limitations should begin to run from the date of the first alleged breach. Verizon argues that this date would be when Verizon made the first "partial payment." Verizon notes that Beta Data filed its Complaint on December 30, 2013 – a date more than three years after the May 2010 partial payment. Verizon contends that Beta Data's claims should be dismissed.

Third, Verizon argues that the course of dealing between the parties prevents Beta Data from attempting to retroactively bill Verizon at a higher rate. Verizon points out that after the expiration of the 2005 agreement Beta Data billed Verizon at the same rate for over three years and that Verizon fully paid each monthly invoice during that period of time. Verizon contends that therefore Beta Data does not have the right to retroactively modify its invoices in direct contravention of the parties' prior course of dealing.

**B. BETA DATA**

In response, Beta Data argues that its claims are based on an enforceable, oral agreement rather than merely an agreement-to-agree. Beta Data contends that, upon the expiration of the 2005 contract, Beta Data fully informed Verizon of Beta Data's billing options and the associated rates – including the five-year and month-to-month rates. Beta Data maintains that upon being presented with those rates Verizon opted for the lower five-year rate and agreed to submit a written contract at later date. Therefore, Beta Data argues that its claims are based on an enforceable oral agreement between the parties, rather than a mere agreement-to-agree.

In response to the statute of limitations argument, Beta Data contends that, in accordance with the applicable statute of limitations, the Complaint was filed within the three years of the date on which the statute of limitations began to accrue. Beta Data argues that the statute of limitations for breach-of-contract actions begins to run from the date of the breach. Beta Data argues that breach did not occur until Verizon repudiated its agreement on May 4, 2011 -- a time less than three years before the date when Beta Data filed the Complaint. As such, Beta Data contends that the applicable statute of limitations does not bar its claims.

Finally, Beta Data contends that the parties' course of dealing did not determine the terms of the agreement. Beta Data argues that Verizon was fully informed of the billing rates Beta Data was offering after the expiration of the 2005 contract. Beta Data maintains that the parties came to an agreement when Verizon selected the five-year billing rate and that Verizon later repudiated that agreement seeking a month-to-month agreement. Beta Data contends that the terms of the agreement were determined by Verizon's selection of billing options rather than the course of dealing between the parties.

6

**STANDARD OF REVIEW**

Verizon seeks dismissal under Rule 12 of the Superior Court Rules of Civil Procedure. With a motion to dismiss, the Court (i) accepts all well pleaded factual allegations as true, (ii) accepts even vague allegations as well pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) will only dismiss a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[1] However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[2]

**DISCUSSION**

**A. AGREEMENT-TO-AGREE**

Verizon's first argument is that Beta Data's claims should be dismissed because they are based on an unenforceable agreement-to-agree. Under Virginia law, "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract."[3] "Mere 'agreements to agree in the future' are 'too vague and too indefinite to be enforced.'"[4] To determine whether a contract is an enforceable contract or merely an agreement to agree, Virginia courts consider whether the contract "includes the requisite essential terms and also whether the conduct of the parties and the surrounding circumstances evince the parties' intent to enter a contract."[5]

Beta Data's claims, as they are alleged in the Complaint, are not based merely on an "agreement-to-agree." Beta Data alleges that in April 2010, upon the expiration of the 2005

---

[1] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[2] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).
[3] *Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364, 281 S.E.2d 818, 820 (1981).
[4] *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 876 F. Supp. 2d 672, 678 (E.D. Va. 2012) (*citing W.J. Schafer Assocs, Inc. v. Cordant, Inc.*, 493 S.E.2d 512, 515 (Va. 1997); *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp. 2d 485, 490 (E.D. Va. 2002).
[5] *Cyberlock*, 876 F. Supp. 2d at 678.

contract, Beta Data presented Verizon with both a five-year agreement rate and a month-to-month rate. Beta Data contends that Verizon opted for the five-year rate and agreed to submit a written five-year subcontractor agreement. As pled, the facts tend to show that Beta Data and Verizon did in fact intend to enter into a contract rather than only agreeing to negotiate a contract at a later date.

Further, according to the Complaint, although the billing rate and length of the contract were not finalized in a written agreement, Beta Data did continue to provide subcontractor services to Verizon. Moreover, Beta Data invoiced Verizon at the five-year rate and Verizon paid for the subcontractor services. Even if the length of time and billing rates did remain to be negotiated, the Complaint alleges enough facts for the Court to draw a reasonable inference that the terms agreed to were certain enough to allow the parties to otherwise perform under the contract. This indicates that the parties mutually assented to be bound by reasonably certain terms at the time of the agreement. As the facts alleged indicate that the parties intended to enter into a contract with reasonably certain terms, Beta Data does not base its claims on allegations of a mere agreement-to-agree. Rather, Beta Data alleges that the parties entered into an enforceable oral agreement with no uncertain terms. Drawing all reasonable inferences in favor of Beta Data, the Court does not find that Verizon is entitled to dismissal based on this argument.

### B. STATUTE OF LIMITATIONS

Verizon's second argument is that Beta Data's claims are barred by the three year statute of limitations for claims based on unwritten contracts. In Virginia, "actions upon any unwritten contract, express or implied," must be brought within three years of the date the cause of action

8

accrued.[6]  Section 8.01-230 of the Virginia Code explains that in a breach-of-contract action, the statute of limitations begins to run on the date of the breach:

> In every action for which a limitation period is prescribed, *the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run . . . when the breach of contract occurs* in actions ex contractu and not when the resulting damage is discovered, except where the relief sought is solely equitable or where otherwise provided under § 8.01-233, subsection C of § 8.01-245, §§ 8.01-249, 8.01-250 or other statute.[7]

The question therefore becomes: When did Verizon commit the breach according to Beta Data's allegations?  Verizon argues that, according to the Complaint, the breach would have occurred when Verizon made the first alleged partial payment.  Beta Data contends that the breach occurred on May 4, 2011, when Verizon announced that it wished to proceed on a month-to-month basis instead of under a five-year agreement.  Alternatively, it could also be argued that Verizon did not commit a breach until it began to cancel Beta Data's services.

Regardless, based on the facts as pled in the Complaint, the earliest possible date in which a breach could have occurred was on May 4, 2011.  Beta Data alleges that, until May 4, 2011, Verizon had given no indication that it wished to proceed on a month-to-month basis instead of on a five-year agreement.  Also, the Complaint sets out that every invoice sent by Beta Data to Verizon was paid in full.  Therefore, until May 4, 2011, Verizon had not committed any alleged act that could be considered a breach under Beta Data's version of the agreement.

Beta Data filed the complaint on December 30, 2013.  May 4, 2011 is less than three years from that date.  Therefore, as Beta Data filed the Complaint within the three-year statute of limitations applicable to unwritten contracts, the statute of limitations does not bar Beta Data's claims.

---

[6] Va. Code Ann. § 8.01-246.
[7] Va. Code Ann. § 8.01-230 (emphasis added).

## C. COURSE OF DEALING

Verizon's third argument is that, based on the course of dealing between the parties, an implied-in-fact contract was formed. Verizon contends, under this theory, that any attempt by Beta Data to retroactively raise the rates on that contract would be unenforceable due to a lack of additional consideration. In *Qwest Commc'ns v. Global NAPs*, the United States District Court for the Eastern District of Virginia dismissed a party's counterclaim because there was no additional consideration offered to justify a retroactive billing change from the price charged under an implied-in-fact contract.[8]

Similarly to the case now before the Court, in *Qwest*, a party continued to provide services to another party after the expiration of a services contract. During this period, the billing party invoiced the other party at the previous contract rate.[9] The *Qwest* court found that the parties had formed an implied-in-fact contract because the invoices were being billed and paid in full.[10] The *Qwest* court then determined that the billing party could not retroactively raise its rates without providing any new consideration after the contract negotiations failed.[11]

Although similar, the factual record in *Qwest* is different from the record before this Court. In *Qwest*, the billing party chose the rate to charge after the contract was terminated.[12] Here, Beta Data alleges that it presented Verizon with a number of different billing rates which changed based on the time period of the contract. This included both the five-year and month-to-month billing rates. Beta Data further claims that Verizon opted for the five-year rate and agreed to submit a written contract at a later date. According to Beta Data's allegations, the parties'

---

[8] 2007 WL 7714219 (E.D. Va. Feb. 5, 2007).
[9] *Id.*
[10] *Id.* at *4.
[11] *Id.*
[12] *Id.*

expressly entered into an oral contract, rather than forming an implied-in-fact contract based on the parties' course of dealing.

Drawing all reasonable inferences in Beta Data's favor, the Court cannot determine that an implied-in-fact contract rather than an express oral contract was created. Further, it is reasonably conceivable that, after discovery, Beta Data will be able to prove that Verizon entered in an oral agreement with knowledge that it would be subject to a retroactive rate increase if Verizon chose to proceed on a month-to-month basis. On this record and at this time, the Court, drawing all reasonable inferences in favor of Beta Data, cannot find that an implied-in-fact contract was in fact created. Consequently, the Court cannot yet determine that Beta Data's retroactive rate change required additional consideration to be enforceable. Therefore, the Court does not hold that Verizon is entitled to dismissal based on this argument.

## D. FRAUD AND DETRIMENTAL RELIANCE CLAIMS

During the May 19, 2014 hearing on the Motion, Beta Data discussed potentially raising a claim of fraud or a claim based on detrimental reliance. However, Beta Data's current Complaint fails to raise either claim. Therefore, should Beta Data wish to proceed based on either of the theories mentioned above, Beta Data must file an amended complaint raising those claims. Under the current Complaint, Beta Data may only proceed under a breach-of-contract theory.

## CONCLUSION

Based on the arguments above, drawing all reasonable inferences based on the facts alleged in Beta Data's favor, Verizon is not entitled to dismissal of Beta Data's Complaint. Therefore, Defendant Verizon Federal, Inc.'s Motion to Dismiss is hereby **DENIED**. Further, if

11

Beta Data wishes to proceed on any theory other than breach-of-contract, it must file an amended complaint raising such a theory.

**IT IS SO ORDERED**.

/s/ Eric M. Davis

Eric M. Davis
Judge